1   NICHOLAS J. BOOS (SBN 233399)
    nboos@maynardcooper.com
2   MAYNARD COOPER & GALE, LLP
    Two Embarcadero Center, Suite 1450
3   San Francisco, California 94111
    Telephone:    (415) 646-4700
4   Facsimile:    (205) 714-6709

5   KRISTIN A. INGULSRUD (SBN 294532)
    kingulsrud@maynardcooper.com
6   MAYNARD COOPER & GALE, LLP
    1925 Century Park East
7   Suite 1700
    Los Angeles, California 90067
8   Telephone:    (310) 596-4500
    Facsimile:    (205) 714-6709

9

10   Attorneys for Defendants
    SAFECO INSURANCE COMPANY OF AMERICA; SAFECO
    INSURANCE COMPANY OF ILLINOIS; and GENERAL
11   INSURANCE COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUSAN CAROL PLICHCIK, an individual, | Case No.  3:21-cv-05137 |
|         Plaintiff, | **NOTICE OF REMOVAL** |
|    v. | |
| SAFECO INSURANCE; SAFECO INSURANCE COMPANY OF AMERICA; SAFECO INSURANCE COMPANY OF ILLINOIS; GENERAL INSURANCE COMPANY OF AMERICA, a California corporation; DOES 1 through 25, inclusive, | |
|         Defendants. | |

    TO ALL PARTIES, THEIR ATTORNEYS OF RECORD IN THIS ACTION AND THE

CLERK OF THE ABOVE-ENTITLED COURT:

    PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. sections 1332(a) and 1441,

defendants Safeco Insurance Company of America ("SICA"), Safeco Insurance Company of

Maynard Cooper & Gale LLP
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111
415.646.4700

Illinois ("SICI"), and General Insurance Company of America ("GICA") hereby remove to the United States District Court for the Northern District of California the state court action described below:

## STATE COURT FILINGS

1.        On May 26, 2021, plaintiff Susan Carol Plichcik ("Plaintiff") filed a first amended complaint in the Superior Court for the State of California in and for the County of Sonoma, case no. SCV-267777, entitled *Plichcik v. Safeco Insurance, et al*.  Plaintiff's first amended complaint alleges that she purchased a homeowners' insurance policy from the defendants in connection with her home in Santa Rosa, California.  (First Amended Complaint ("FAC"), ¶ 11.)  Plaintiff alleges that that her personal property was destroyed in an October 2017 wildfire, and that she made a claim for approximately $158,000.  (FAC, ¶¶ 17, 19, 20, 23.)  Plaintiff alleges that the claim was denied in full.  (FAC, ¶ 59.)  Plaintiff asserts causes of action against all defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, false promise, violation of California Business & Professions Code § 17200, intentional infliction of emotional distress, and violation of Unruh Act and ADA.  Plaintiff seeks general damages, special damages, consequential damages, attorneys' fees, punitive damages, pre and post judgement interest, and costs.  (FAC, Prayer.)

2.        SICA, SICI, and GICA were served with copies of the summons and complaint on June 2, 2021.  True and correct copies of the documents served on SICA, SICI, and GICA are attached as Exhibit A.  The documents set forth in Exhibit A constitute all of the process, pleadings and orders received by SICA, SICI, and GICA.

## DIVERSITY JURISDICTION

**A.      Citizenship**

3.        Federal courts have jurisdiction over controversies between "citizens of different states" pursuant to 28 U.S.C. section 1332(a)(1) and Article III, Section 2, of the United States Constitution.  *Navarro Sav. Ass'n. v. Lee*, 446 U.S. 458, 460-61 (1980).  The determination of citizenship for diversity purposes is governed by federal rather than state law.  *See, Rockwell Int'l*

*Credit Corp. v. United States Aircraft Ins. Group*, 823 F.2d 302, 304 (9th Cir. 1987); overruled on other grounds, *Partington v. Gedan*, 923 F.2d 686 (9th Cir. 1991).

4.    In determining whether diversity of citizenship exists, only the named defendants are considered.  *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998).  The citizenship of defendants sued under fictitious names, such as "Doe" defendants, is disregarded for diversity jurisdiction purposes.  28 U.S.C. § 1441(a); *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002).  For diversity purposes, a corporation may have dual citizenship (i.e., "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.") (28 U.S.C. § 1332(c)(1)).

5.    Plaintiff is a citizen of the state of California.

6.    Defendant SICA is, and at all times relevant to the first amended complaint was, a corporation organized and existing under the laws of the State of New Hampshire.  SICA's principal place of business is in Massachusetts.  SICA is a citizen of the states of New Hampshire and Massachusetts.

7.    Defendant SICI is, and at all times relevant to the first amended complaint was, a corporation organized and existing under the laws of the State of Illinois.  SICI's principal place of business is in Massachusetts.  SICI is a citizen of the states of Illinois and Massachusetts.

8.    Defendant GICA is, and at all times relevant to the first amended complaint was, a corporation organized and existing under the laws of the State of New Hampshire.  GICA's principal place of business is in Massachusetts.  GICA is a citizen of the states of New Hampshire and Massachusetts.

9.    Plaintiff, on the one hand, and SICA, SICI, and GICA, on the other hand, are citizens of different states.

10.    Plaintiff also names "Safeco Insurance" as a defendant.  "Safeco Insurance" is a trade name used by Liberty Mutual Group.  There is no legal entity named "Safeco Insurance" among the Liberty Mutual group of companies.

1   11.     Because "Safeco Insurance" is not a legal entity, SICA, SICI, and GICA may

2   remove this action to this Court because there is complete diversity between Plaintiff, on the one

3   hand, and SICA, SICI, and GICA, on the other hand.

4   12.     Although the first amended complaint names "DOES 1 through 25" as defendants

5   in this action, the citizenship of fictitiously named defendants is disregarded for removal

6   purposes.  28 U.S.C. § 1441(b)(1); *Soliman v. Philip Morris, Inc*., 311 F.3d 966, 971 (9th Cir.

7   2002).

8   **B.      Amount in Controversy**

9   13.     This Court also has jurisdiction over this action under 28 U.S.C. section 1332

10  because the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff

11  asserts

12  14.     Plaintiff alleges that that her personal property was destroyed in an October 2017

13  wildfire, and that she made a claim for approximately $158,000.  (FAC, ¶¶ 17, 19, 20, 23.)

14  Plaintiff alleges that the claim was denied in full.  (FAC, ¶ 59.)  In addition to that amount,

15  Plaintiff seeks, among other things, attorneys' fees as damages under *Brandt v. Superior Court*,

16  37 Cal. 3d 813, 815 (1985), and an undisclosed amount of punitive damages.  (FAC, Prayer.)  In

17  calculating the amount in controversy, the Court must consider the punitive damages Plaintiff

18  may recover if she should prevail in her claim.  *Surber v. Reliance Nat. Indemn. Co*., 110 F. Supp.

19  2d 1227. 1232 (N.D. Cal. 2000).

20  15.     Although SICA, SICI, and GICA deny that Plaintiff is entitled to recover the

21  foregoing claimed damages, Plaintiff's first amended complaint has placed them in controversy.

22  Accordingly, the amount in controversy exceeds $75,000.

23  16.     Thus, this action may be removed to this Court by SICA, SICI, and GICA

24  pursuant to 28 U.S.C. sections 1332, 1441 and 1446 because the amount in controversy exceeds

25  $75,000 and there is complete diversity between Plaintiff, on the one hand, and SICA, SICI, and

26  GICA, on the other hand.

27  WHEREFORE, defendants Safeco Insurance Company of America, Safeco Insurance

28  Company of Illinois, and General Insurance Company of America further give notice that the

above-described action, now pending against them in the Superior Court for the State of California, County of Sonoma, has been removed therefrom to this Court on the ground of diversity of citizenship.  A copy of this Notice of Removal shall be contemporaneously filed in the office of the clerk for the Superior Court of Sonoma County.


Dated:  July 2, 2021                                MAYNARD COOPER & GALE LLP


                                                            /s/ Nicholas J. Boos
                                                    Nicholas J. Boos
                                                    Kristin A. Ingulsrud
                                                    Attorneys for Defendants
                                                    SAFECO INSURANCE COMPANY OF
                                                    AMERICA; SAFECO INSURANCE
                                                    COMPANY OF ILLINOIS; and GENERAL
                                                    INSURANCE COMPANY OF AMERICA

# EXHIBIT A

1st AMENDED

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*
**ELECTRONICALLY FILED**
**Superior Court of California**
**County of Sonoma**
**5/27/2021 4:24 PM**
Arlene D. Junior, Clerk of the Court
By: Janie Dorman, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SAFECO  INSURANCE,  Additional Parties attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SUSAN CAROL PLICHCIK

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br>*(El nombre y dirección de la corte es):*  Sonoma Superior Court, Hall of Justice | CASE NUMBER: *(Número del Caso):* <br> SCV-267777 |

600 Administration Drive, Santa Rosa CA 95403

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Susan Carol Plichcik, PO Box 16020, Santa Rosa California 95402, Phone 707-206-5814

DATE:
*(Fecha)* 5/27/2021 4:24 PM    **ARLENE D. JUNIOR**  Clerk, by   *Jorman*   , Deputy
                                           *(Secretario)*    Janie Dorman        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* SAFECO INSURANCE COMPANY OF ILLINOIS
   under: ☒ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

1st AMENDED

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PLICHCIK vs SAFECO INSURANCE et al. | SCV-267777 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff      ☒ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

SAFECO INSURANCE COMPANY OF AMERICA; SAFECO INSURANCE COMPANY OF ILLINOIS; GENERAL INSURANCE COMPANY OF AMERICA, a California corporation; DOES 1 through 25, inclusive

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Susan Carol Plichcik
PO Box 16020
Santa Rosa CA 95402
Telephone: (707) 206-5814

Plaintiff In Pro Per

ELECTRONICALLY FILED
Superior Court of California
County of Sonoma
5/26/2021 4:51 PM
Arlene D. Junior, Clerk of the Court
By: Griselda Zavala, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SONOMA

## UNLIMITED JURISDICTION

| | |
|---|---|
| SUSAN CAROL PLICHCIK, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SAFECO INSURANCE; SAFECO INSURANCE COMPANY OF AMERICA; SAFECO INSURANCE COMPANY OF ILLINOIS; GENERAL INSURANCE COMPANY OF AMERICA, a California corporation; DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. SCV-267777<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) Breach of Contract**<br>**(2) Breach of the Implied Covenant of Good Faith and Fair Dealing**<br>**(3) Intentional Misrepresentation**<br>**(4) False Promise**<br>**(4) Violation of Business & Professions Code § 17200**<br>**(5) Intentional Infliction of Emotional Distress**<br>**(6) Violation of Unruh Act**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**EXHIBIT A- NBC NEWSREEL**<br>**EXHIBIT B-Policy** |

COMES NOW, Plaintiff SUSAN CAROL PLICHCIK, who alleges for her First Amended Complaint against Defendants, SAFECO INSURANCE, SAFECO INSURANCE COMPANY OF AMERICA, SAFECO INSURANCE COMPANY OF ILLINOIS, GENERAL INSURANCE COMPANY OF AMERICA, DOES 1 through 25 (collectively, "Defendants" or "Safeco") and each of them as follows:

### PARTIES

1.     At all times relevant to this action, Plaintiff SUSAN CAROL PLICHCIK ("Ms. Plichcik" or "Plaintiff") was a resident of the City of Santa Rosa in Sonoma County, California. \

2.      Defendant SAFECO INSURANCE, A Liberty Mutual Company ("Safeco") is an insurance company licensed to transact insurance in the State of California. Safeco Insurance Company has a website called "SAFECO.com". Safeco's website states that Safeco Insurance is offered by Safeco Insurance Company of America and/or its affiliates, with their principal place of business at 175 Berkeley Street, Boston, Massachusetts.

3.      Defendant SAFECO INSURANCE COMPANY OF AMERICA ("SAFECO") is an insurance company licensed to transact insurance in the State of California [Entity No. C3484102].

4.      Defendant SAFECO INSURANCE COMPANY OF ILLINOIS ("SAFECO) ) is an insurance company licensed to transact insurance in the State of California [Entity No. C1543747].

5.      Defendant GENERAL INSURANCE COMPANY OF AMERICA ("SAFECO") is an insurance company licensed to transact insurance in the State of California [Entity No. C3484103].

6.      Plaintiffs are ignorant of the names and capacities of DOES 1 though 25 and sues them as DOES 1 through 25, inclusive. Plaintiffs will amend this action to allege these DOE defendants' names and capacities when they become known.

7.      Plaintiff is informed and believes, and based thereon alleges that at all material times alleged herein Defendants, and each of them, were the agents, servants, employees, and/or joint venturers of each other and at all relevant times conspired together and aided and abetted each other, and were acting within the course and scope of their agency, service, employment, or joint venture, and that each Defendant acted with the knowledge, consent, authority, or acquiescence of the remaining Defendants, or ratified the acts and omissions of each other Defendant. Each of the defendants herein is responsible in some manner for the occurrences, injuries, and damages herein, and the damages were directly and proximately caused by these defendants' acts and omissions.

**VENUE & JURISDICTION**

8.    The Court has jurisdiction to hear the subject matter of this complaint. The Court also has personal jurisdiction over defendants because they are residents of California or do business in California.

9.    Venue is proper in this Court because Plaintiff's property loss occurred in Sonoma County during the Tubbs Fire and purchased her homeowners' insurance policy in Sonoma County. Furthermore, all of the defendants sell insurance policies and transact business in Sonoma County.

**INTRODUCTION**

10.    After breaking a promise made to Plaintiff, to the media, and to the general public that a written inventory list would not be required from Tubbs Fire victims **(EXHIBIT A)**. Defendants nevertheless put the disabled Plaintiff through over three years of harassing, intimidating tactics before denying her claim in bad faith while denying her a reasonable and necessary accommodation. The California Insurance Commission stated that Defendants are legally barred from requiring a written inventory list from Tubbs Fire Victims pursuant to their promise made  publicly to consumers and that Defendants only needed a handful of documents to process the claim without haste. However, Defendants demanded a written inventory list and thousands of additional supporting documents. Defendants also questioned Plaintiff for two full days about each item on her written inventory list without lunch  to their full satisfaction.    But it did not end there. Defendants then demanded to inspect Plaintiff's and her relatives' properties looking for anything suspicious and kicked the Plaintiff's dwarf goat on her farm.   After nothing turned up and Defendants' representatives stated they were fully satisfied, Defendants nevertheless denied Plaintiff's claim.

**FACTUAL ALLEGATIONS**

Plaintiff's Homeowners' Insurance Policy

11.    In 2017, Plaintiff purchased a homeowners insurance policy (Policy No. OM2581913) ("Policy") from Defendants for her home in Santa Rosa, California ("Insured

1  Address"). A true and correct copy of this policy is attached as **Exhibit B** to this complaint.

2       12.     Prior to Defendants' disclosing the Insured Address to Plaintiff's abusive and

3  stalking brother, the Insured Address was confidential due to Plaintiff's participation in the

4  California Secretary of State's Safe at Home Program as a victim of domestic violence, stalking

5  and harassment. Plaintiff was the sole insured on the policy.

6       13.     Under the conditions of the policy, Defendants are obligated to pay $157,150 in

7  personal property coverage in the event of a catastrophic fire loss. The policy provides that

8  Plaintiff's own personal belongings are covered even if located outside of her own home in the

9  case of such a catastrophic fire loss. The Policy, attached as **Exhibit B**, states: "COVERAGE C —

10  PERSONAL PROPERTY **1.** Personal property owned or used by any *insured* is covered **while it**

11  **is anywhere in the world**. When personal property is usually located at an *insured's* residence,

12  other than the *residence premises,* coverage is limited to 10% of the Coverage C limit. Personal

13  property in a newly acquired principal residence is not subject to this limitation for the 30 days

14  immediately after you begin to move the property there."

15       14.     Defendants' website at "Safeco.com" states that a homeowner's personal property

16  is covered "anywhere in the world".

17       15.     Plaintiff is a domestic violence survivor. Since 2016, she has been a protected party

18  under the California Secretary of State Safe at Home Confidential Address Program. The

19  California Secretary of State Safe at Home program prohibits anyone, including private

20  companies, from divulging the home address or location of Plaintiff to anyone. Plaintiff provided

21  Defendants with copies of the court orders and instructed Safeco not to release any information to

22  anyone, especially her restrained brother, as she is fearful of him. The restrained brother is not an

23  insured on the Policy, has never been listed in any capacity on the Policy, and is not a party to this

24  action.

25  **SHERIFF GIVES URGENT EVICTION WARNING**

26       16.     On or about August 24, 2017, Sonoma County Superior Court issued a Writ of

27  Possession of Real Property evicting all occupants from the Insured Address due to a Probate

28

1  Court Order that gave Plaintiff's restrained brother temporary use. Plaintiff's insurance broker

2  Paul Landers assured her that her personal property would be covered under the terms of her

3  policy. On or about September 29, 2017, Ruth Cooper from the Sonoma County Sheriff Office

4  sent Plaintiff and urgent message that she will be evicted from her own home the following week

5  and stated:

6      Hello Susan,

7      I am sorry not to get back to you earlier. I have been in meetings this afternoon. We
    will re-post the property first before a final eviction. This should occur next week,

8      although I do not have the exact day. Please advise Alice as well.
    I will be out on Monday, 10/2, returning on Tuesday if you need to contact me.

9      Thank you.

10     **RUTH COOPER**
    **Civil Bureau Supervisor**

11     **Sonoma County Sheriff's Office**

12     **2796 Ventura Avenue**
    **Santa Rosa, CA 95403**

13     **PH: (707) 565-2751**

14 Plaintiff was further advised that she would be forcefully removed by the Sonoma County Sheriff,

15 if necessary, from her own home and she would forfeit any and all personal property left behind

16 and to move without haste.

17     17.    Pursuant to the Probate Court's orders, in or about September and October 2017,

18 Plaintiff moved her personal belongings from the Insured Address to her sister's house at 2040

19 Shelbourne Way, Santa Rosa, CA 95403 ("Sister's House").

20 **TUBBS FIRE ENGULFS COFFEY PARK**

21     18.    On Sunday October 8, 2017, the Tubbs Fire began engulfing the City of Santa

22 Rosa, California. Plaintiff evacuated during the night with her pets. Plaintiff knocked on her

23 neighbors' doors, but many were refusing to evacuate as they did not receive a Sonoma County

24 alert nor an order to evacuate by anyone.

25     19.    On Monday October 9, 2017, the City of Santa Rosa fire department released a

26 press statement stating that most of the Coffey Park neighborhood, where Plaintiff's Sister's

27 House was located, was destroyed. Plaintiff and her sister attempted to evacuate pets left behind

28 and tried to save the house. Both sisters were in shock when they saw Sister's House reduced to

1  rubble.

2      20.    Plaintiff suffered catastrophic fire loss of personal belongings, pets, family

3  heirlooms, photos, and jewelry due to the fire.

4      21.    Then President of the United States declared the Tubbs Fire a FEMA Declared

5  National Disaster, which eventually destroyed over 36,810 acres of land, killing 22 people, and

6  destroying 5,643 homes, including Plaintiff's Sister's House and 5% of the housing inventory in

7  the city of Santa Rosa.

8      22.    The City of Santa Rosa oddly enough chose not to warn the people of their city,

9  stating that such warnings would have caused panic and chaos.

10     23.    On or about October 2017, Plaintiff subsequently filed Claim No. 036397981-01

11 with Safeco through her insurance broker for approximately $158,000 in losses. Plaintiff also

12 informed Safeco, in writing and over the phone, that she is hearing impaired and has multiple

13 disabilities and to send her emails in order to facilitate communication. Safeco repeatedly ignored

14 Plaintiff's request for a reasonable and necessary accommodation of her disabilities to facilitate

15 the claims process. Safeco continued to call Plaintiff via telephone even though Plaintiff could

16 hardly hear.

17     24.    After the wildfire, Plaintiff met with a Safeco representative/agent face

18 to face in Santa Rosa, California. Safeco's agent declined Plaintiff's invitation to inspect the

19 burned lot of Sister's House, stating it was unnecessary for a simple personal property claim and

20 furthermore he had witnessed the complete and utter devastation of the fire.

21     25.    Safeco's agent also stated to Plaintiff that Safeco was waiving the inventory list

22 requirement and that Plaintiff was "very lucky" as Safeco was one of the few companies stepping

23 up to the plate to help the wildfire survivors and assured Plaintiff that her claim would be quickly

24 paid. Safeco's agent even stated something to the effect of, "this means that you are very lucky

25 because Safeco is waving the inventory list requirement" and that "you won't have to do an

26 inventory list" and "relive the nightmare". Upon information and belief other Safeco insureds were

27 given this same face to face pledge.

28

26.     In fact, Chris Chumra from NBC News reported in a January 7, 2018 news broadcast that: **Only Safeco/Liberty Mutual told NBC Bay Area that it will pay North Bay fire victims 100 percent of their contents policy without a written inventory. A Safeco/Liberty Mutual spokesman said customers will undergo an "in-depth conversation" with a property specialist who will determine whether the victim will be paid 100 percent of the coverage for their contents. A written inventory will not be required.** A true copy of the NBC News article reflecting this statement is attached as **Exhibit A**.

27.     However, Safeco acted in bad faith, with oppression, malice and fraud and did not waive the inventory list requirement for Tubbs Fire survivors. In fact, Safeco forced Plaintiff to relive the nightmare for four years.

**Defendants Wrongly State That Plaintiff's Policy Does not Cover Losses**

28.     Safeco told Plaintiff to pursue a claim with her sister's insurance instead, even though Plaintiff is not an insured on her sister's homeowner's policy.

29.     Plaintiff subsequently contacted her insurance brokers at Paul Landers Insurance. Paul Landers insisted that her contents were covered outside her own home under the Policy. Plaintiff directed Safeco to paragraph C of the Policy.

30.     On or about October 25, 2017, Safeco claims adjuster Michelle Johnson ("claims adjuster Michelle") issued a Reservation of Rights letter.  The Reservation of Rights letter demanded that Plaintiff's sister exhaust her own coverage before Plaintiff's Safeco claim could move forward. As a result, Plaintiff's claim was stalled for at least one year.

**The California Department of Insurance Reviews Plaintiff's Claim Favorably**

31.     In early 2018, Plaintiff met in person with the California Insurance Commission at the Santa Rosa Recovery Center in Santa Rosa, California. Plaintiff spoke for at least an hour with the California Insurance Commissioner's legal counsel who reviewed Plaintiff's Safeco claims documents, including the Reservation of Rights letters from Safeco. The Insurance Commission attorney informed Plaintiff that:

- Safeco is obligated to pay the claim without haste;

- No inventory list could be demanded nor required. Furthermore, Safeco is legally barred from requiring an inventory list under the California Insurance Code which prohibits insurance companies from making false statements to the press;

- The Reservation of Rights Letter dated October 25, 2017, requiring Plaintiff's sister to exhaust her own insurance, was improperly issued as this would cause unreasonable delay in the claims process;

- The few documents that Safeco needed to process the claim were: the Policy and Sheriffs eviction notice and email dated September 29, 2017;

- In Safeco did not pay the claim immediately, Plaintiff was instructed to file a complaint with the California Insurance Commission.

32.      In April of 2018, Plaintiff informed the Safeco claims adjuster, Michelle Johnson, via telephone of the California Department of Insurance's favorable review of her claim. However, the Safeco claims adjuster still demanded a letter from Plaintiff's sister's insurer, and threatened to deny the claim.

33.      The Safeco claims adjuster agreed to contact the Sheriff and demanded the cell phone number of the restrained party – Plaintiff's brother. Plaintiff gave the claims adjuster the restrained party's phone number reluctantly. Plaintiff begged the claims adjuster not to call the restrained party and offered the contact information for his attorney as an alternative. The claims adjuster pledged not to call the restrained party and was repeatedly told that Plaintiff's Insured Address was protected by the Secretary of State Safe at Home program and of the restraining orders against Plaintiff's brother.

34.      Safeco's claims adjuster told Plaintiff that she had contacted the Sonoma County Sheriff Department and the restrained party and stated to Plaintiff that she was completely satisfied with the claim. The claims adjuster rejected any further documents from Plaintiff.

**Defendants Disclose Plaintiff's Confidential Home Address to Her Abuser**

35.      In the same phone conversation, Safeco's claims adjuster admitted to divulging Plaintiff's claim information, including Plaintiff's protected home address, to the restrained

brother upon his demand even though Plaintiff repeatedly informed the claims adjuster about the protective orders against the restrained brother. Plaintiff is informed and believes that this was done to discourage Plaintiff from pursuing her claim. Plaintiff suffered extreme fear and anxiety and moved to another safe location immediately.

**Plaintiff Submits An Inventory List, But Defendants Demand More**

36.     In April 2018, Safeco's adjuster agreed over the phone to issue plaintiff a new reservation of rights letter as proof that Safeco was fully satisfied with investigation of the claim. However, Safeco still demanded an inventory list and the letter from Plaintiff's sister's insurance stating that the sister's claim was exhausted. Safeco wrote that without the inventory list, Plaintiff's claim would be denied. In this same phone call Plaintiff also offered a letter from the Sheriff. Ms. Johnson stated that she did not want the letter or any other evidence.

37.     On April 20, 2018, Safeco issued a new reservation of rights letter to Plaintiff. It continued to demand a letter from Plaintiff's sister's insurance.

38.     On or about September 9, 2018, Plaintiff submitted a letter from her sister's insurance carrier to Safeco. Shortly thereafter, Plaintiff submitted a 53-page spreadsheet of 534 items of personal property with valuations and deprecation amounts to Safeco. By then, nearly a year had passed since the wildfire.

39.     In September of 2018, Plaintiff sent Safeco a letter requesting that they correspond in writing with her because she was almost deaf.

40.     In September of 2018, Safeco sent Plaintiff a letter demanding photos, receipts, etc within ten days. In response, Plaintiff called Safeco asking for more time and told Safeco about wounds on her hands and her other disabilities. Safeco's response on the phone was to deny giving Plaintiff more time.

41.     Around the same time, Safeco sent Plaintiff a letter of demanding an examination under oath within ten days. In response, Plaintiff called Safeco asking for more time. Safeco refused to give Plaintiff more time to schedule the EUO.

42.     Safeco refused to provide Plaintiff with a copy of the claim file. Plaintiff asked for

Claim File in September of 2018 over the phone and also in an email and also later again in person at the Examination Under Oath.

43.    In an October 2018 email Safeco wrote to Plaintiff that they had some general questions to discuss about her Claim. In response to that email, October 2018 Plaintiff sent a letter or email asking for list of written questions. Safeco did not send any list of written questions. Safeco transferred her claim to a special investigations unit.

44.    In late Dec 2018, Plaintiff retained legal counsel to assist her with the Claim. With counsel's assistance, Plaintiff provided approximately 600 pages of receipts, photos and documents electronically. Plaintiff spent nearly a month with her attorneys at LegalAid collecting the evidence.

**Defendants Deny Plaintiff Reasonable Accommodations**

45.    Rather than offering her an accommodation, Safeco subjected her to an examination under oath on January 7, 2019, in person regarding the inventory list. Safeco would not tell her what information what information they were seeking and stated that here claim was not being treated as suspicious. Safeco did not give Plaintiff, who was disabled, reasonable notice of the examination and rejected the policyholder's pleas for a reasonable notice. Safeco improperly noticed the examination under oath.

46.    This first exam on January 7, 2019, lasted about 9 hours, primarily asking question about each item on the inventory list. At the examination, Safeco's counsel stated that Safeco never received the evidence from Plaintiff. The evidence was again handed over in person to Safeco's counsel. Plaintiff was not given a lunch break despite her for frequent breaks due to low blood sugar. Safeco attempted to bar the policyholder's service dog from entering to assist her. Plaintiff nearly passed out during the exam due to her low blood sugar and later passed out at home. Plaintiff asked for several breaks. Safeco's counsel stated the examination would conclude on one day if Plaintiff didn't take a lunch break.

47.    The examination under oath continued from January 7 to February 21, 2019, amounting to approximately twenty hours of videotaped questioning. Plaintiff continually asked if

1   there were any "red flags" on her file. Counsel for Defendants stated there were never any red
2   flags on her file and her file was not being treated as suspicious.

3        48.    Safeco held the examination within the burned zone with panoramic views of the
4   burned zone of Coffey park. This caused the policyholder severe anxiety and stress as she had to
5   relive the horror of the wildfire and the loss of her pets.

6        49.    During the examination Plaintiff handed directly to Defendants a half of foot stack
7   of pages of documents including her 52 page inventory list, emails, photos, including 600 pages of
8   receipts and emailed 700 more photos and documents, to support her 53 page inventory list and
9   satisfied all of Defendants' long list of wild requests. Defendants asked wide open and irreverent
10  question.

11       50.    Upon information and belief, Plaintiff was not given proper notice of the
12  examination or given a copy of California Insurance Code section 2071.1. Furthermore, the length
13  of the exams were not reasonable nor even necessary as Safeco could not require an inventory list.

14       51.    At the Examination Under Oath conducted by Safeco's attorney, Christina Ho,
15  Safeco also demanded that Plaintiff waive her attorney client privilege and asked for invasive and
16  confidential documents unrelated to the claim, such as:

17      -   Emails with Plaintiff's attorneys of all cases including Probate Case

18      -   Real estate client records

19      -   Thousands of homeowner records

20      -   Real estate broker

21  Safeco did not explain why such documents were necessary to processing the Claim.

22       52.    During the examinations, Safeco made comments mocking Plaintiff and her
23  disability. During the examination, Safeco also mocked and laughed at other policyholders'
24  claims, such as ridiculing receipts for dresses several sizes too small or receipts for clothing stores
25  or designers that "obviously do not carry their size". Plaintiff was ridiculed and intimidated during
26  the examination.

27       53.    Safeco conducted the examinations under oath in bad faith and intimidated, and

28

1   traumatized, and discouraged the Plaintiff from pursuing her legitimate wildfire loss claim. For

2   example, Plaintiff even contacted a person that gave her a cotton candy machine 10 years ago to

3   meet Safeco's oppressive and illegal demands. Plaintiff provided proof of ice skating lessons and

4   scuba lessons, as Safeco scrutinized her claim. Plaintiff provided actual Snoopy Cam photos of her

5   on the ice, taking ice skating lessons, and receipts all of the same sporting items. Plaintiff felt

6   ridiculed and shamed. Safeco's attorney told Plaintiff that Safeco needed photos of her on ice,

7   receipts for ice skating lessons, etc.

8        54.    Although Plaintiff was represented by counsel and Safeco knew that Plaintiff was

9   represented by counsel, Safeco contacted Plaintiff directly in January of 2019 via email without

10  the consent of her legal counsel and asked Plaintiff questions outside of the Examination Under

11  Oath. Specifically, on or about January 8, 2019, Safeco emailed Plaintiff, demanding that she

12  identify her deceased friend, whom Plaintiff had known since the first grade, from a photo. This

13  deceased friend and his family were witnesses to the court eviction order. This friend was also

14  going to move help Plaintiff move her antiques. Before the fire in October 2017, Plaintiff's friend

15  was killed in a motorcycle accident, which was reported by the SF Chronicle. Safeco claimed

16  Plaintiff was lying that her friend was deceased because Safeco saw his Facebook page which

17  appeared active. But Safeco did not contact Plaintiff's other witnesses. This caused Plaintiff

18  extreme emotional distress and grief. Upon information and belief, this and other despicable acts

19  by Safeco were done intentionally to harass and intimidate Plaintiff and to deter her from

20  completing the Examination Under Oath so that Safeco could accuse her of not cooperating in

21  order to deny her Claim.

22       55.    After the two Examinations Under Oath, Safeco wrote to Plaintiff and asked to

23  inspect the entire parcel on which several family properties were located -- every house, barn, and

24  building on about ten acres. Safeco even asked Plaintiff to contact her restrained brother. Safeco

25  was in doubt that Plaintiff moved all her personal property to her Sister's House.

26       56.    On or about May 14, 2019, a Safeco agent, Sally Dolton, spent half of a day

27  inspecting all Plaintiff and her relatives' personal property in their own houses and sheds seeking

28

1   evidence of any items declared on the inventory list and taking photos of her and her relatives'

2   personal property. Safeco's inspector stated she completed the investigation to their full

3   satisfaction and found no items on the inventory list. The Safeco agent informed Plaintiff that

4   there were no red flags on her file and no evidence of any wrongdoing.

5        57.     During the inspection, the Safeco agent repeatedly jabbed and kicked Plaintiff's

6   Nigerian pet goat in the gut, stating "This is how you get them to move ….you have to jab them

7   hard  in the gut." The goat still refused to move the Safeco agent jabbed harder while ignoring

8   Plaintiff's pleas to stop. Plaintiff told the Safeco agent to simply walk around the goat. Plaintiff

9   believes the Safeco agent kicked the goat hard enough to dent its stomach to intimidate her as a

10   domestic violence survivor and get her to drop her claim.

11        58.     In or about summer of 2019, Plaintiff asked Safeco for a reasonable

12   accommodation of a few more weeks to reconcile any missing documents from the file and to find

13   new legal counsel. Her reasonable request for accommodation was denied by Safeco in writing.

14   Safeco was still asking Plaintiff to reconcile receipts, photos to claimed items. Safeco also never

15   sent Plaintiff a copy of her Claim file, making it nearly impossible for Plaintiff to "reconcile" the

16   documents that Safeco continued to demand. Plaintiff included a doctor's note about the condition.

17   Safeco responded in writing ignoring the request for accommodation and instead demanding

18   appraisals of the inventory items.

19        59.     In August 2019 Safeco sent a letter to Plaintiff's counsel denying the Claim in full.

20        60.     In late 2019 Plaintiff met face with the California Insurance Commission in

21   Healdsburg, California at the Kincade Fire recovery center. Plaintiff submitted a complaint

22   verbally to the CA Insurance Commission.

23        61.     Plaintiff was told to send Safeco a letter cc'ing the CA Insurance Commission to

24   re-open the claim. Safeco responded to denying the request to re-open Plaintiff's Claim.

25        62.     Safeco subsequently refused the department's demand to reopen the claim and

26   appeal. Upon the department's request, Plaintiff sent letters again to reopen the case, asking for an

27   appeal, and later sent a letter with intent to sue. Safeco refused to reopen the claim.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**(Breach of Contract against all Defendants)**

63.     Plaintiffs incorporate herein by reference and reallege all of the allegations stated in this Complaint.

64.     Plaintiff paid consideration in the form of premiums and have faithfully performed all obligations required to be performed by her under the terms of the insurance contract, except to the extent performance may have been excused by, among other things, Defendants' bad faith conduct and breach of the insurance policy.

65.     Plaintiffs were insured under a valid residential property insurance policy, Policy No. OM2581913 (Exhibit A), issued by Defendants, which was in effect when the loss occurred.

66.     Defendants breached the terms of the contract by failing to fully pay monies due under the contract and by forcing Plaintiff to institute this litigation.

67.     As a direct, proximate, and legal result of Defendants' breaches of the contract, Plaintiff has been, and continue to be, damaged in an amount in excess of the jurisdictional limits of this Court, including but not limited to: the loss of benefits due under the contract; consequential damages including interest on monies Plaintiffs could and should have received promptly, but which it did not receive in a timely fashion as a result of Defendants' breach of contract; and other fees, expenses, and costs to be proven at trial.

68.     Plaintiff has also sustained other losses as a direct, proximate, and legal result of Defendants' conduct, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing against all Defendants)**

69.     Plaintiff incorporates herein by reference and reallege all of the allegations stated in this Complaint.

70.     The insurance policy identified in this action contained an implied covenant of good faith and fair dealing, whereby Defendants agreed to perform obligations under the Policy in good faith, to deal fairly with Plaintiff, and to not unreasonably deprive Plaintiff of her rights.

71.     Defendants tortiously breached the implied covenant of good faith and fair dealing arising from the insurance contract by unreasonably denying to fully pay for Plaintiff's loss.

72.     Despite Plaintiff's demand that all owed monies be paid, Defendants refuses and continues to engage in unlawful insurance practices and misrepresentations. Such bad faith conduct constitutes a continuing tort, which is causing Plaintiff's continued damages.

73.     Defendants engaged and continues to engage in a course of conduct to further its own economic interests in violation of its obligations to Plaintiffs. This conduct includes, but is not limited to, the conduct alleged in the Complaint and the following:

a) Failing to conduct a full, fair, prompt, and thorough investigation of all of the bases of Plaintiffs' Claim;

b) Failing to evaluate Plaintiffs' Claim objectively;

c) Failing to treat Plaintiffs' interests with equal regard as its own;

d) Using unduly restrictive and unreasonable interpretations of the Policy as an excuse for denying payment of benefits owed to Plaintiffs;

e) Using improper standards to adjust Plaintiffs' claim;

f) Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claim;

g) Compelling Plaintiff to institute litigation to recover amounts due under the Policy;

h) Deliberately denying benefits that Defendants knew were owed under the policy in conscious disregard of Plaintiffs' known rights and established California case law;

i) Engaging in deceptive practices to avoid paying benefits to Plaintiff;

j) unreasonably failed to pay/delayed payment of policy benefits;

k) failed to reasonably inform Plaintiff of her rights under the Policy and under the California Insurance Code;

l) Other acts or omissions of which Plaintiff is presently unaware, and which will be shown according to proof at the time of trial.

74.     Without any reasonable basis for doing so, and with full knowledge and/or

1  conscious disregard of the consequences, Defendants have failed to and refused to act in good

2  faith or act fairly toward Plaintiff, and Defendants have, in bad faith, failed and refused to perform

3  its obligations under the insurance policy, and under the laws of the State of California.

4      75.    As a direct result of its breach of contract and breach of implied covenant of good

5  faith and fair dealing, Defendants have waived and/or is estopped from asserting any right to

6  contest either coverage or the amount of benefits claimed, or to be claimed, by Plaintiff.

7      76.    As a proximate result of the wrongful and tortious conduct of Defendants and its

8  representatives, Plaintiff has suffered legally compensable damages in amounts to be shown at the

9  time of trial, including, but not limited to, loss of contract benefits, interest thereon, and

10  consequential damages.

11      77.    As a direct and proximate result of the conduct of Defendants and its

12  representatives, Plaintiff has been required to engage the services of legal counsel and as such, has

13  incurred, and will continue to incur, costs and attorneys' fees for an amount to be determined

14  according to proof. Plaintiffs claim these fees as a distinct item of damages pursuant to *Brandt v.*

15  *Superior Court (1985) 37 Cal.3d 813.*

16      78.    Plaintiffs are informed and believe, and thereon allege, that the conduct of

17  Defendants described above was part of a long-established pattern and practice designed to force

18  claimants to accept less, or no, policy benefits, than they would otherwise be entitled to receive

19  under the terms of their policies, while unfairly minimizing the financial exposure and risk of

20  Defendants.

21      79.    The acts and omissions of Defendants and its representatives described above were

22  part of the established corporate practices and procedures of Defendants, and were directed,

23  approved, or ratified by individuals in management positions.

24      80.    In carrying out the actions and inactions described in this Complaint, Defendants

25  and its representatives acted intentionally, with a conscious disregard of the known rights of

26  Plaintiff, and did so in a fraudulent and oppressive manner, all of which warrants the imposition of

27  punitive damages under the guidelines of California Civil Code section 3294 in an amount

28

1   sufficient to punish and deter Defendants from engaging in similar conduct in the future.

2   <strong><u>THIRD CAUSE OF ACTION</u></strong>

3   <strong>(Intentional Misrepresentation against all Defendants)</strong>

4        81.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

5   this Complaint.

6        82.    At the time the policy of insurance was obtained by Plaintiff, Defendants

7   represented that Plaintiff's personal property anywhere in the world would be covered for fire loss.

8   Defendants also represented the policy provided "comprehensive homeowner coverage " with

9   "customer care " provided by qualified, trained and properly licensed personnel. Defendants also

10   represented on the news and directly to Plaintiff that an inventory list would not be required from

11   victims of the Tubbs wildfire.

12        83.    These representations were false.

13        84.    Defendants knew that these representations were false when they made them.

14        85.    Defendants intended that Plaintiff rely on these representations.

15        86.    Plaintiff reasonably relied on these representations as Defendants held themselves

16   out as reputable, reliable insurance companies and even stated on television news broadcasts that

17   they would not require inventory lists from Tubbs Wildfire victims.

18        87.    The above course of conduct was pursued without due regard for and in reckless

19   and conscious disregard of the financial and emotional circumstance of Plaintiff. As a direct and

20   proximate result of the conduct of Defendants, Plaintiff suffered anxiety, panic, worry, anger,

21   emotional and mental distress, sleeplessness, and out-of-pocket expenses all to her general damage

22   in an amount to be determined.

23        88.    As a further direct and proximate result of the conduct of Defendants, Plaintiff

24   incurred and will incur economic detriment including but not limited to, attorneys fees, cost and

25   expenses of litigation, and other special damages in an amount not yet determined.

26        89.    At all times relevant herein Defendants acted fraudulently, with malice, oppression

27   and willful disregard for Plaintiffs' rights and interests as said Defendants sold its insurance

28

17<br><u>FIRST AMENDED COMPLAINT</u>

1  product with undisclosed and concealed limitations, implemented unreasonable and wrongful

2  evaluation of Plaintiff's losses and damages, and then refused insurance coverage at any burden or

3  cost, economic, emotional, and/or physical to Plaintiff solely for said Defendants' greed, economic

4  benefit, and premiums. The conduct of Defendants as described herein was undertaken with a

5  conscious disregard of Plaintiffs' rights, based upon said Defendants' greed and superior

6  bargaining and advertising power, and with the intent to vex, injure and annoy Plaintiff so as to

7  constitute malice, fraud or oppression pursuant to California Civil Code Section 3294. Such

8  conduct entitles Plaintiff to punitive damages in an amount appropriate to deter such conduct.

9  **FOURTH CAUSE OF ACTION**

10  **(False Promise against all Defendants)**

11  90.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

12  this Complaint.

13  91.    Defendants made a promise to Plaintiff that an inventory list would not be required

14  since she was a victim of the Tubbs wildfire.

15  92.    Defendants did not intend to perform this promise when they made them.

16  93.    Defendants intended that Plaintiff rely on this promise.

17  94.    Plaintiff reasonably relied on the promise as Defendants held themselves out as

18  reputable, reliable insurance companies and even stated on television news broadcasts that they

19  would not require inventory lists from Tubbs Wildfire victims.

20  95.    Defendants did not perform the promised act.

21  96.    Plaintiff was harmed.

22  97.    Plaintiff's reliance on Defendants' promise was a substantial factor in causing her

23  harm.

24  **FIFTH CAUSE OF ACTION**

25  **(Violation of Business & Professional Code § 17200 against all Defendants)**

26  98.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

27  this Complaint.

28

18

99.     Defendants acts as described herein constitute unfair business practices which are illegal under California Business & Professions Code section 17200 which prohibits unfair competition, which includes unlawful, unfair or fraudulent business acts or practices and unfair, deceptive or untrue acts and specifically the conduct stated herein which violates the California Insurance Code and regulations promulgated thereto.

100.    As a proximate result of Defendants' course of unfair and deceptive conduct, Plaintiffs have been injured as previously alleged. Plaintiffs seek all relief allowed pursuant to statute. Plaintiffs pursue this action as private attorneys general. Plaintiffs seek disgorgement of any profit gained by Defendants due to Defendants' wrongful conduct, restitution and attorneys' fees.

## SIXTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress against all Defendants)

101.    Plaintiffs incorporate herein by reference and reallege all of the allegations stated in this Complaint.

102.    Defendants' conduct was outrageous.

103.    Defendants intended to cause Plaintiff emotional distress.

104.    Defendants also acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

105.    Plaintiff suffered severe emotional distress.

106.    Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

107.    Defendants, and each of them, acting individually and/or in concert as part of a greater conspiracy as hereinabove set forth, acted with oppression, fraud and malice and a willful and conscious disregard of Plaintiff's rights.

## SEVENTH CAUSE OF ACTION

### (Violation of Unruh Act and ADA against all Defendants)

108.    Plaintiffs incorporate herein by reference and reallege all of the allegations stated in

1   this Complaint.

2       109.   Defendant denied full and equal accommodations to Plaintiff.

3       110.   A substantial motivating reason for Defendants' conduct was Plaintiff's medical

4   condition or disabilities.

5       111.   Plaintiff was harmed.

6       112.   Defendants' conduct was a substantial factor in causing Plaintiff's harm.

7

8

9                       **PRAYER**

10

11

12       **WHEREFORE**, Plaintiffs pray for relief against Defendants, and each of them as

13   follows:

14       1. For general, compensatory damages, plus prejudgment interest and other damages

15   according to proof;

16       2. For special and consequential damages according to proof;

17       3. For attorneys' fees and costs;

18       4. For fees pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813;

19       5. For punitive and exemplary damages including treble damages according to proof;

20       6. For costs of suit herein;

21       7. For pre-judgment interest as provided for by applicable law; and

22       8. For such further relief as the Court may deem just and proper.

23

24

25                 **TRIAL BY JURY**

26   Trial by jury is demanded on all such issues so triable.

27

28

1

2

3     DATED: May 26, 2021                    By: _Susan Carol Plichcik_

4                                            Susan Carol  Plichcik, Plaintiff In Pro Per

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A

FIRST AMENDED COMPLAINT

| Full Time Jobs | Part Time Jobs | Hourly Jobs | Work for Home |
Jobs2Careers

# Insurance Companies Require Written Inventory From Fire Victims' Burned Homes

NBC BAY AREA RESPONDS

By Chris Chmura, Joe Rojas, Lindsey Boyd and Selena Hernandez • Published at 11:21 pm on January 7, 2018



To get 100 percent of the benefits they paid for, many North Bay fire victims say their... **Read more**



How To Get A Scupted Face?
Do This

### Trending Stories


**SAN JOSE**
San Jose Couple's Dogs Allegedly Sedated by Pet Sitters


**SAN MATEO**
1 Dead in Crash Near Highway 101 Offramp in San Mateo


**HOUSING**
Oakland Bans Tenant Criminal Background Checks


**SAN JOSE**
Two Elementary Schools in San Jose Set to Close


**SAN FRANCISCO DISTRICT ATTORNEY**
SF DA Boudin Announces Citywide Elimination of Cash Bail

When the overnight firestorm raged through Santa Rosa in October, nothing in the three-bedroom house at 1445 Starview Court survived.

"Nothing," said homeowner Holly Webb. "It's all gone."

And so, Webb was stunned when State Farm told her that getting the full $237,000 listed on her insurance policy for the contents of her home will require a written inventory of everything that was inside.

### Local


**PUBLIC EDUCATION • 15 MINS AGO**
Two San Jose Elementary Schools Set to Close at End of 2019-2020


**SAN MATEO • 57 MINS AGO**
1 Dead in Crash Near Highway 101 Offramp in San Mateo

### Weather Forecast

SAN JOSE, CA

**47°**
Broken Clouds
10% Precip

TONIGHT
**46°**

TOMORROW
**64°**



"They want every single thing you ever had," she said. "Every cup and saucer, every spoon and fork. Everything that you had in your life."

Webb expected a full payment with no questions asked, after all, she and her husband lost everything.

"This is what I have: a pile of ash," she said, standing atop charred rubble.

State Farm declined to discuss specifics of Webb's case. In general, a spokesperson explained that consumers cannot count on getting the amount listed in your policy because those numbers represent the maximum amount the policy will pay.

"They do not represent an automatic payment amount," she wrote.

After learning that, Webb is bracing herself for thousands less than she expected.

"I'm not going to get the coverage they said I had," she said, calling the process "cruel."

When all that remains of a home is ash, what's the point of a contents list, anyway?  We asked around.

Nationwide told us it was "unable to find anyone who is able to adequately answer [our] question."

USAA said a contents list might assist victims in getting a tax deduction. The Insurance Information Institute, an insurance trade group, told us requiring an inventory stops fraud.

"It's legit. People do try to cheat insurance companies," said attorney Amy Bach. "But not in a disaster."

Bach heads United Policyholders, a San Francisco nonprofit that helps people with insurance. She believes the real reason disaster victims are required to do detailed inventories is to reduce the amount insurance companies must pay out.

"They know people are going to leave a lot of money on the table," Bach said.

Only Safeco/Liberty Mutual told NBC Bay Area that it will pay North Bay fire victims 100 percent of their contents policy without a written inventory. A Safeco/Liberty Mutual spokesman said customers will undergo an "in-depth conversation" with a property specialist who will determine whether the victim will be paid 100 percent of the coverage for their contents.  A written inventory will not be required.

Other companies said they will let victims avoid an inventory too, but the amount victims will receive is being reduced by as much as 75 percent.

Webb says State Farm is giving her two years to complete the inventory, when all she wants is to move on today.

"And it's not just me, it's my neighbors," she said.

She's right. We checked with the California Department of Insurance. It told us hundreds of fire victims have complained about being forced to itemize everything they had in their home before their insurance company pays their claim in full.

"It's overwhelming," said California Insurance Commissioner Dave Jones. "And we understand this."

Jones issued a notice to insurance companies urging them to waive their inventory requirements for wildfire victims. He gave them a Jan. 8 deadline.

"I'm confident they can all waive it," Jones said. "Particularly in Holly's case, as you describe it, where the home is a total loss. There's nothing left."

Jones does not have authority to require 100 percent payments for fire victims. But, he plans to publicly post the names of insurance companies that will – and will not – give fire victims a break from the paperwork.

Webb wants insurance agents to start disclosing how the claims process works before they sell a policy and tell customers they might be required to do a full home inventory after a disaster to get paid.

"Here's how you do it," she recommended. "And here's what we'll need."

Webb said no of that occurred when she signed on with State Farm.

"No, it didn't happen," she said.

We have asked state farm to reconsider Webb's case. She is hopeful the company makes good on its "Good Neighbor" slogan.

"It you were a 'Good Neighbor,' you'd pay what you owe me – for what I paid for all these years," she said.

Here's how you can protect yourself right now: do a home inventory before disaster strikes.

It's simple. Take a tour of your home with your smartphone. Shoot video and snap photos. Open drawers and comb through closets.

There are apps out there that will help you. United Policyholders has one, here: http://www.uphelp.org/pubs/uphelp-home-inventory-app. No matter how you create your list, send it to the cloud. That way, if your phone burns, you have a back-up copy of everything you need.

f   𝕏   ✉   💬

## MORE FROM THE WEB

· SUV PRICES | SEARCH ADS

**SUVs in United States Might Be Cheaper Than You Think**   Sponsored

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT B

FIRST AMENDED COMPLAINT


Safeco Insurance™
A Liberty Mutual Company

## CUSTOMER ACCOUNT SUMMARY

JUNE 8, 2017

| AGENT: | CUSTOMER: |
|---|---|
| LANDERS INSURANCE LLC | SUSAN PLICHCIK |
| 1424 E SHERMAN AVE STE 400 | PO BOX 2811 |
| COEUR D ALENE    ID  83814-4045 | ROHNERT PARK CA  94927-2811 |
| | |
| 1-208-651-6208 | **Account Number:** |
| | 72261763714 |
| INFO@LANDERSINS.COM | |

| QUESTIONS? | Policy Services: 1-208-651-6208 | Online Account Services: www.safeco.com/myaccount | 24-Hour Claims: 1-800-332-3226 |
|---|---|---|---|

Thank you for being a valued customer.

At Safeco, we partner with your agent to provide you with a broad portfolio of products, responsive customer service and options that are simple and convenient.   Your Safeco Package is a comprehensive combination of convenience, savings and protection.   And it's our priority to protect the things and people that matter most to you.

Enclosed are important documents about your policy renewals.   If you have questions regarding your coverage or other products offered by Safeco, please contact your agent.

We appreciate your business and the trust you place in us to meet your insurance needs.

**YOUR POLICY DETAILS:**

| Policy | Policy Number | Policy is Effective From    To | Term Premium |
|---|---|---|---|
| HOMEOWNERS | OM2581913 | 08/07/2017 08/07/2018 | $517.15 |
| PREMIUM IF YOU SELECT FULL PAY | | | $493.15 |

    Discounts applied to this policy:  Package Auto Discount, Umbrella Policy Discount
    Issued by:  General Insurance Company of America

| AUTOMOBILE | M1763714 | 02/06/2017 02/06/2018 | $1,270.48 |
|---|---|---|---|

    Discounts applied to this policy:  Account, Good Driver, Superior Good Driver, Multi-Car, Both Side
    Air Bag
    Issued by:  Safeco Insurance Company of America

| DWELLING FIRE | OM2604422 | 05/18/2017 05/18/2018 | $633.15 |
|---|---|---|---|

    Discounts applied to this policy:  Account Credit
    Issued by:  Safeco Insurance Company of America

| UMBRELLA | UM2581916 | 08/07/2017 08/07/2018 | $203.00 |
|---|---|---|---|

    Discounts applied to this policy:  No discounts applied
    Issued by:  Safeco Insurance Company of America

**THIS IS NOT A BILL.** Please do not send payment now. You will be receiving a separate invoice statement(s) based on the payment schedule you selected. Thank you for selecting us to service your insurance needs.

OC-726/EPA 4/09
G1



# NOTICE OF PRIVACY PRACTICES — CALIFORNIA

We appreciate the trust you place in us when you buy insurance from one of our companies. We want you to know how we gather information about you, how we protect it, and how you can make sure it's correct.

## WHAT WE COLLECT

Most of the information we obtain comes directly from you and your insurance agent. For example, your application gives us your name, address and Social Security number.

We may also ask for data from other outside sources, including:

- Your transactions with our affiliates or other insurance companies (such as your payment history or claims history); or

- Data we receive from a consumer reporting agency or insurance support organization ("Organization"), such as your credit history, driving record, claims history or value and condition of your property.

Organizations from which we obtain information may keep it and disclose it to others as permitted by law.

If we obtain medical information about you, it is generally received in connection with the administration or management of your insurance policy or claim or for the detection and prevention of fraud. We will not share your medical information with our affiliates or non-affiliates for marketing purposes.

We treat information about our former customers in the same manner that we treat information about current customers.

## HOW WE USE DATA ABOUT YOU

We only disclose personal data about you as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. We require these parties to use your personal data only for the reasons we gave it to them. These third parties may include:

- Agents and brokers authorized to sell Safeco insurance products;

- Independent contractors (such as auto repair facilities, towing companies, property inspectors and independent adjusters);

- Auditors, attorneys, courts and government agencies;

- Other companies which may reinsure your policy or with which you have other coverage;

- Group policyholders (for reporting claims data or an audit); and/or,

- Other companies and Organizations for actuarial or research studies.

We may also share data with other companies with which we have joint marketing agreements for products offered by Safeco. We may also share information about our transactions (such as payment history) and experiences (such as claims made) with you within the Safeco family of companies. Finally, we may share data in response to court orders, such as subpoenas.

We do not sell your information to others, nor do we provide it to third parties for their own marketing purposes.

## SECURITY

We maintain physical, electronic, and administrative safeguards to protect your data from unauthorized access. Our employees are authorized to access customer files only for legitimate business purposes.

## YOUR AGENT OR BROKER

Your agent or broker is not a Safeco employee and is not subject to our privacy policy. Because your agent or broker has a unique business relationship with you, he or she may have data about you that Safeco does not have. Your agent or broker may use this information differently than Safeco. Contact your agent or broker to learn more about their privacy practices.

**REVIEWING YOUR FILE**

You can request a copy of the data about you in our files to review. Your request must be in writing. We will respond within 30 business days of receiving your request. We will advise you of third parties to whom we have given the data during the last two years. We will also give you the name and address of any reporting organization from which we received data about you.

There are certain types of information, such as the information collected for a claim or when the possibility of a lawsuit exists, that we are not required to provide you.

If the law allows you to review records supplied by a medical provider, you can direct us to send the records to you or to a provider of your choice (as long as the provider is licensed in the area related to the records being provided). We may send mental health records directly to you only with your medical provider's approval.

**IF YOU DISAGREE WITH OUR RECORDS**

If you believe information in our files is wrong, you can notify us in writing. We will review your file within 30 business days of receiving your notice. If we agree with you, we will amend our records and notify you about the change. This change will become part of the file. It will be included in any future disclosures to others and will be sent to:

- Anyone you designate who may have received the data during the previous two years.
- Anyone who received the data from us during the previous seven years.
- Organizations that provided the data that was changed pursuant to your request.

If we disagree with you, we will explain why. You can provide us with a written statement explaining why you believe the data is wrong. This statement will become part of the file and will be included in any future disclosures of the disputed subject matter. Your statement will also be sent to the parties listed above.

**SAFECO'S WEB SITE**

If you have Internet access and want to learn more about our online security practices, click on the Privacy Policy link on www.safeco.com.

American Economy Insurance Company
American States Insurance Company
American States Insurance Company of Texas
American States Preferred Insurance Company
First National Insurance Company of America
General Insurance Company of America
Insurance Company of Illinois
Safeco Insurance Company of America
Safeco Insurance Company of Illinois
Safeco Surplus Lines Insurance Company
(For mailing address, please contact your agent or nearest local Safeco office.)

© 2011 Safeco Insurance Company of America, Member of Liberty Mutual Group. All Rights Reserved.

**Safeco Insurance**™
A Liberty Mutual Company

## GENERAL INSURANCE COMPANY OF AMERICA (A SAFECO Company)
Home Office: 62 Maple Ave, Keene, NH 03431 (A stock insurance company.)
### HOMEOWNERS POLICY DECLARATIONS

**POLICY NUMBER:**
OM2581913

**POLICY PERIOD:** **FROM:** AUG. 7, 2017 12:01 A.M.
**TO:** AUG. 7, 2018 12:01 A.M.

**NAMED INSURED AND MAILING ADDRESS:**
SUSAN PLICHCIK
PO BOX 2811
ROHNERT PARK CA  94927-2811

**AGENT:**
LANDERS INSURANCE LLC
1424 E SHERMAN AVE STE 400
COEUR D ALENE   ID   83814-4045

**Valued Homeowners Customer Since: AUG.  7, 2015**

**INSURED LOCATION:**
1870 DUTTON AVE
SANTA ROSA CA  95407-6988

**POLICY SERVICE INFORMATION:**
**TELEPHONE:**  1-208-651-6208
**E-MAIL:**   INFO@LANDERSINS.COM
**WEBSITE:** www.landersins.com

### IMPORTANT MESSAGES

- Your policy has renewed effective August 7, 2017.
- THIS POLICY DOES NOT PROVIDE EARTHQUAKE COVERAGE.
- The limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.

**LIMITS OF LIABILITY**
(Policy Section I - Property Coverages and Section II - Liability Coverages)

| Coverage A — Dwelling | Coverage B — Other Structures | Coverage C — Personal Property | Coverage D — Additional Living Expense | Coverage E — Personal Liability | Coverage F — Medical Payments |
|---|---|---|---|---|---|
| $314,300 | $31,430 | $157,150 | $62,860 | $300,000 | $1,000 |

**DEDUCTIBLES.**
The following deductibles apply unless otherwise stated within the policy.

|  | AMOUNT |
|---|---|
| Section I - Property Coverages | $    1,000 |

|  | PREMIUM |
|---|---|
| BASIC COVERAGES | $      602.00 |
| OTHER COVERAGES, LIMITS AND OPTIONAL COVERAGES | $       20.00 |
| DISCOUNTS AND SURCHARGES | $     -104.85 |
| TOTAL POLICY PREMIUM: | $      517.15 |
| TOTAL POLICY PREMIUM IF YOU SELECT FULL PAY: | $      493.15 |

**Premium Payer:**   Insured



## GENERAL INSURANCE COMPANY OF AMERICA (A SAFECO Company)
## HOMEOWNERS POLICY DECLARATIONS

CONTINUED                          **POLICY NUMBER:  OM2581913**

You may pay your premium in full or in installments. There is no annual fee for
the following billing plans: Full Pay, Annual 2-Pay. Installment fees for all other
billing plans are listed below. If more than one policy is billed on the installment
bill, only the highest fee is charged. The fee is:
   $0.00 per installment for recurring automatic deduction (EFT)
   $0.00 per installment for recurring credit card or debit card
   $2.00 per installment for all other payment methods

**POLICY LIMITS AND OTHER ADDITIONAL COVERAGES**
(Unless otherwise stated, all limits and coverages are included in basic coverages)
   COVERAGE LEVEL: NEW QUALITY-PLUS
SECTION I - PROPERTY COVERAGES
COVERAGE C - PERSONAL PROPERTY - 3. SPECIAL LIMITS OF LIABILITY

| | | | | | |
|---|---|---|---|---|---|
| a.Money, pre-paid cards... | $ | 250 | h.Business Property | | |
| b.Rare coins and currency... | $ | 3,000 |    On Premises... | $ | 3,000 |
| c.Securities, debit cards... | $ | 3,000 |    Off Premises Sub-limit | $ | 1,000 |
| d.Watercraft... | $ | 3,000 | i.Tapes, records, discs... | $ | 500 |
| e.Trailers... | $ | 3,000 | j.Theft of rugs... | $ | 5,000 |
| f.Theft of jewelry, watches... | $ | 3,000 | k.Grave Markers... | $ | 3,000 |
| g.Theft of silverware... | $ | 3,000 | | | |

**OTHER INCLUDED COVERAGES/POLICY PROVISIONS**

| | Limit | Premium |
|---|---|---|
| Loss Assessment Coverage | $ 3,000 | Included |
| California Workers Compensation | $ | 12.00 |
|    Inservant | | N/A |
|    Outservant | | N/A |
| Building Ordinance or Law Coverage ( 10%) | $ 31,430 | Included |
| Fungi, Wet or Dry Rot, or Bacteria | $ 10,000 | Included |
| Reasonable Repairs | $ 5,000 | Included |
| Fire Department Service Charge | $ 3,000 | Included |
| Land Stabilization | $ 5,000 | Included |
| Arson Reward | $ 25,000 | Included |
| Criminal Conviction Reward - Item a. Information | $ 2,500 | Included |
| Criminal Conviction Reward - Item b. Property Recovery | $ 5,000 | Included |
| Credit Card, Fund Transfer, Forgery & Counterfeit Money | $ 3,000 | Included |
| Volunteer America | | Included |
|    Section I (All Perils Coverage) | | Included |
|    Section II - Liability Coverage | | Included |
|    Section II - Property Damage | $ 2,000 | Included |

| OPTIONAL COVERAGES | Limit | Premium |
|---|---|---|
| Personal Property Replacement Cost | | Included |
| Extended Dwelling Coverage | Up to 25% | Included |
| Personal Offense Coverage | $ 300,000 | $ 8.00 |

| DISCOUNTS AND SURCHARGES | | Premium |
|---|---|---|
| Package Auto Discount | | Included |
| Umbrella Policy Discount | | Included |
| LICENSE, TAX OR FEE: | | |
|    California Seismic Safety Fee | $ | .15 |

For information on other deductibles, coverages or discounts available in your state
or to review your account online, log on to www.safeco.com

**FORMS APPLICABLE TO THIS POLICY:**

| | |
|---|---|
| HOM-7301/EP 1/09 | - PERSONAL PROPERTY REPLACEMENT COST |
| HOM-7300/EP 1/09 | - EXTENDED DWELLING COVERAGE |

327X

## GENERAL INSURANCE COMPANY OF AMERICA (A SAFECO Company)
## HOMEOWNERS POLICY DECLARATIONS

CONTINUED                          **POLICY NUMBER:** OM2581913

```
HOM-7350/EP 1/09        - PERSONAL OFFENSE COVERAGE
HOM-7210/EP 1/09        - SAFECO NEW QUALITY-PLUS HOMEOWNERS CVRG
HOM-7100/CAEP 11/11     - SPECIAL PROVISIONS - CALIFORNIA
HOM-7237/CAEP 7/09      - CALIFORNIA WORKERS COMPENSATION
HOM-7579/CAEP R1 11/11  - CA RESIDENTIAL PROPERTY DISCLOSURE
HOM-7232/EP 1/09        - EXECUTION CLAUSE
HOM-7030/EP R2 1/09     - HOMEOWNERS POLICY
```





COPY






**Safeco Insurance**™
A Liberty Mutual Company

June 8, 2017

LANDERS INSURANCE LLC
1424 E SHERMAN AVE STE 400
COEUR D ALENE   ID   83814-4045

**POLICY NUMBER**
OM2581913

**AGENT TELEPHONE:**
1-208-651-6208

SUSAN PLICHCIK
PO BOX 2811
ROHNERT PARK CA  94927-2811

## Action Requested:
## Important Information to Update or Consider a CEA Policy

Dear Policyholder:

Thank you for choosing Safeco Insurance™ to satisfy your home-insurance needs.

**Please be aware that most home insurance policies in California do not cover earthquake damage — a separate policy is required.** Because your earthquake risk is real, Safeco has joined forces with the California Earthquake Authority (CEA) to meet your earthquake insurance needs.

Whether you are thinking of updating your existing CEA earthquake policy — OR you're considering earthquake insurance for the first time — **CEA now offers more coverage choices, more deductible options, and more affordable rates.**

- **Already have CEA earthquake coverage?**

  Now is an excellent time to review your policy. Call your home insurance representative to see if any of CEA's new options are right for you.

- **Don't have a CEA earthquake policy?**

  Please consider it now because **earthquake insurance is both necessary and affordable**. If you think "an earthquake will never affect me," think again. Earthquakes strike without warning, and recovery can be expensive. Government assistance, if available, is limited. And government loans, if you qualify, must be repaid.

CEA policies can be updated or purchased at any time.

Join nearly one million Californians who have earthquake coverage. Your home insurance representative is ready to help you get the CEA coverage that's right for you. Call today.

Safeco Insurance and California Earthquake Authority: working together to help prepare our policyholders for the next big earthquake.

Sincerely,

Personal Lines Underwriting



EQ-0509/CAEP 1/17

Page 1 of 1



**Safeco** Insurance.™
A Liberty Mutual Company

# SAFECO HOMEOWNERS POLICY

**Table of Contents**

| | Beginning On Page |
|---|---|
| **INSURING AGREEMENT** | 1 |
| **SECTION I — PROPERTY COVERAGES** | 1 |
|     **COVERAGE A — DWELLING** | 1 |
|     **COVERAGE B — OTHER STRUCTURES** | 1 |
|         Building Property We Cover | 1 |
|         Building Property We Do Not Cover | 1 |
|         Building Property Losses We Cover | 1 |
|         Building Property Losses We Do Not Cover | 1 |
|     **COVERAGE C — PERSONAL PROPERTY** | 4 |
|         Personal Property We Cover | 4 |
|         Personal Property We Do Not Cover | 5 |
|         Personal Property Losses We Cover | 6 |
|         Personal Property Losses We Do Not Cover | 7 |
|     **COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT** | 7 |
|     **ADDITIONAL PROPERTY COVERAGES** | 8 |
|     **PROPERTY CONDITIONS** | |
|         Deductible | 11 |
|         Your Duties | 11 |
|         Loss Settlement | 12 |
| **SECTION II — LIABILITY COVERAGES** | |
|     **COVERAGE E — PERSONAL LIABILITY AND COVERAGE F — MEDICAL PAYMENTS TO OTHERS** | |
|         Liability Losses We Cover | 14 |
|         Liability Losses We Do Not Cover | 14 |
|     **ADDITIONAL LIABILITY COVERAGES** | 18 |
|     **LIABILITY CONDITIONS** | 20 |
| **SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS** | |
|         Policy Period and Changes | 22 |
|         Concealment or Fraud | 22 |
|         Liberalization Clause | 22 |
|         Cancellation | 22 |
|         Non-Renewal | 23 |
|         Assignment | 23 |
|         Our Right to Recover Payment | 23 |
|         Death | 23 |
| **POLICY DEFINITIONS** | 23 |



338

HOM-7030/EP R2 1/09
G1

## INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy.

This policy applies only to losses occurring during the policy period.

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY WE COVER

### COVERAGE A — DWELLING

We cover:

1.  the dwelling on the *residence premises* shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

2.  attached carpeting, built-in appliances, fixtures; and

3.  materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises.*

### COVERAGE B — OTHER STRUCTURES

We cover:

1.  fences, driveways and walkways; and

2.  other structures on the *residence premises,* separated from the dwelling by clear space. This includes retaining walls, decorative or privacy walls and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

### BUILDING PROPERTY WE DO NOT COVER

1.  Land, no matter where it is located, including land on which the dwelling is located, except as noted in **Additional Property Coverages, Land Stabilization.**

2.  Other structures:

    a.  used in whole or in part for *business;* or

    b.  rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private residence or garage.

### BUILDING PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded.

### BUILDING PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area;

1.  freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired. This provision does not apply if you have used reasonable care to:

    a.  maintain heat in the building; or

    b.  shut off the water supply and drain the system and appliances of water;



HOM-7030/EP R2 1/09

- 1 -

2.  freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, retaining wall, decorative or privacy wall, bulkhead, pier, wharf or dock;

3.  theft in, to or from a dwelling under construction, including materials and supplies for use in the construction, until or unless the dwelling is occupied. A dwelling under construction includes being newly built, remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you are occupying the dwelling as your primary residence at the time of the loss;

4.  vandalism and malicious mischief, including fire caused by arson, or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling under construction, including being newly built, remodeled, reconstructed, renovated or repaired is not considered vacant.

5.  continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years.

6.  **a.**  wear and tear, marring, scratching, deterioration;

    **b.**  inherent defect, mechanical breakdown;

    **c.**  smog, rust or other corrosion, or electrolysis;

    **d.**  smoke from agricultural smudging or industrial operations;

    **e.**  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

    **f.**  birds, vermin, rodents, insects or domestic animals;

    **g.**  pressure from or presence of plant roots.

However, we do insure for any resulting loss from items **1.** through **6.** unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this Section. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance from which water or steam escaped. We do not cover loss to the system or appliance from which water or steam escaped.

7.  **Pollution or Contamination,** meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants or contaminants* at any time except as provided by **Additional Property Coverages — Household Products Coverage** under **Section I — Property Coverages.**

8.  **Ordinance or Law,** meaning any ordinance or law:

    **a.**  requiring or regulating the construction, remodeling, renovation, repair, or demolition of building property, including removal of resulting debris, unless specifically provided under this policy;

    **b.**  the requirements of which result in a loss in value to property; or

    **c.**  requiring any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.*

    This exclusion applies whether or not the building property has been physically damaged.

9.  **Earth Movement,** meaning:

    **a.**  the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling of a river or stream;

    **b.**  erosion, shifting or displacement of materials supporting the foundation; and

    **c.**  volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

    This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

    We do cover direct loss by fire, explosion or theft.

10. **Water Damage,** meaning:

    **a.**    **(1)**   flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

         **(2)**   release of water held by a dam, levee, dike or by a water or flood control device or structure;

    **b.**   water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

    **c.**   water which escapes or overflows from sewers or drains located off the *residence premises;*

    **d.**   water which escapes or overflows from drains or related plumbing appliances on the *residence premises.* However, this exclusion does not apply to overflow and escape caused by malfunction on the *residence premises,* or obstruction on the *residence premises,* of a drain or plumbing appliance on the *residence premises;* or

    **e.**   water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

Water includes any water borne materials.

This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

11. **Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the *residence premises.* If any **Building Property Losses We Cover** ensues on the *residence premises,* we will pay only for the ensuing loss.

12. **Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

13. Loss caused directly or indirectly by war, including the following and any consequence of any of the following:

    **a.**   undeclared war, civil war, insurrection, rebellion, or revolution;

    **b.**   warlike act by a military force or military personnel; or

    **c.**   destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

14. **Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

15. **Intentional Loss,** meaning any loss arising out of any act committed:

    **a.**   by or at the direction of any *insured;*

    **b.**   with the intent to cause a loss.

This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy provided:

    **c.**   the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

    **d.**   the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss, less payments made pursuant to **Section I — Property Conditions, Mortgage Clause.**

**e.** For purposes of this provision, "domestic abuse" means:

    **(1)** physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

    **(2)** sexual assault of one family or household member by another;

    **(3)** stalking of one family or household member by another family or household member; or

    **(4)** intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

**16. Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

**17. Weather** that contributes in any way with a cause or event not covered in this section to produce a loss. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

**18. Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

  **a.** planning, zoning, development, surveying, siting;

  **b.** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

  **c.** materials used in repair, construction, renovation or remodeling; or

  **d.** maintenance;

of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

**19. Fungi, Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for under **Additional Property Coverages — Fungi, Wet or Dry Rot, or Bacteria** in **Section I — Property Coverages.**

**20. Collapse,** except as provided under **Additional Property Coverages — Collapse** in **Section I — Property Coverages.** However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

## PERSONAL PROPERTY WE COVER

### COVERAGE C — PERSONAL PROPERTY

**1.** Personal property owned or used by any *insured* is covered while it is anywhere in the world. When personal property is usually located at an *insured's* residence, other than the *residence premises,* coverage is limited to 10% of the Coverage C limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

During the time the *residence premises* is under construction by or for the *insured,* our limit of liability for personal property other than on the *residence premises* shall be equal to the amount specified for Coverage **C.** Our total limit shall not exceed the policy limit for Coverage **C** in any one loss.

**2.** At your request we cover:

  **a.** personal property owned by others while the property is on that part of the *residence premises* occupied exclusively by any *insured;*

  **b.** personal property owned by a guest or a *residence employee,* while the property is at any residence occupied by any *insured.*

**3. SPECIAL LIMITS FOR PERSONAL PROPERTY**

The following groups of personal property are covered only up to the special limit shown on your Policy Declarations page. The special limit is the total amount available for each group for any one loss and does not increase the Coverage C limit. The loss of, or damage to, more than one item in a group arising from the same cause or event is considered one loss.

  **a.** Money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

  **b.** Rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

    **c.** Securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

    The dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

    The limit includes the cost to research, replace or restore the material from the lost or damaged medium.

    **d.** Watercraft, including their trailers, furnishings, equipment and outboard motors.

    **e.** Trailers not used with watercraft.

    **f.** Theft of jewelry, watches, furs, precious and semiprecious stones.

    **g.** Theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

    Silverware, goldware and pewterware include:

        **(1)** plateware, flatware, hollowware, tea sets, trays, trophies and the like;

        **(2)** other utilitarian items made of or including silver or gold; and

        **(3)** all items of pewterware.

    **h.** *Business* property, not excluded elsewhere, while located on the *residence premises.* Up to $1,000 of the limit on your Policy Declarations may be used for *business* property, not excluded elsewhere, while located off the *residence premises.*

    **i.** Tapes, records, discs or other media in a motor vehicle or other motorized land conveyance on or away from the *residence premises.*

    **j.** Theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

    **k.** Grave markers.

## PERSONAL PROPERTY WE DO NOT COVER

**1.** Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

**2.** Animals, birds or fish.

**3.** Motorized land vehicles including their equipment, parts and accessories while in or upon the vehicle.

    However, we do cover:

    **a.** motorized land vehicles used solely to service the *residence premises* and not subject to motor vehicle registration or licensed for road use;

    **b.** vehicles designed for the handicapped and not licensed for road use;

    **c.** up to $500 for disassembled parts of a motorized land vehicle while located on the *residence premises;* or

    **d.** up to $500 for electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour.

**4.** Electronic apparatus, including their accessories and antennas, designed to be operated solely by power from the electrical system of a motor vehicle. This exclusion applies only while such property is in or upon a motor vehicle.

**5.** Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**6.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

**7.** Property of roomers, boarders, tenants and other residents not related to any *insured.*

**8.** Property in a location on the *residence premises,* when the location is rented or held for rental to others by any *insured* for more than 31 days in a calendar year. This exclusion does not apply to

342

property of an *insured* in a sleeping room rented to others by an *insured* on the *residence premises.*

9.   Property, away from the *residence premises,* rented or held for rental to others.

10.  *Business* property or merchandise:

   **a.**   in storage;

   **b.**   held as a sample; or

   **c.**   held for sale or delivery after sale.

11.  *Business* documents, records or data regardless of the medium on which they exist. However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

---

## PERSONAL PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in **Coverage C — Personal Property** caused by a peril listed below except as limited or excluded.

1.   **Fire or lightning.**

2.   **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a building with:

   **a.**   continuous walls on all sides extending from ground level to the roof;

   **b.**   doors and windows in the walls at various locations; and

   **c.**   a continuous roof sheltering all areas within the wall perimeter.

3.   **Explosion.**

4.   **Riot or civil commotion.**

5.   **Aircraft,** including self-propelled missiles and spacecraft.

6.   **Vehicles,** meaning impact by, or with, or upset of, a vehicle.

7.   **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations, including slash burns.

8.   **Vandalism or malicious mischief.**

9.   **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   **a.**   committed by any *insured* or by any other person regularly residing on the *insured location;*

   **b.**   in, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

   **c.**   from that part of a *residence premises* rented by any *insured* to other than an *insured.*

   This peril does not include loss caused by theft that occurs away from the *residence premises* of property while at any other residence owned, rented to, or occupied by any *insured,* except while an *insured* is temporarily residing there.

   Property of a student who is an *insured* is covered while at a residence away from home.

10.  **Falling objects.**

   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

   This peril does not include loss:

   **a.** to the appliance or system from which the water or steam escaped;

   **b.** caused by or resulting from freezing except as provided in the peril of freezing below; or

   **c.** on the *residence premises* caused by accidental discharge or overflow which occurs off the *residence premises.*

   For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

   This peril does not include loss on the *residence premises* while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired, unless you have used reasonable care to:

   **a.** maintain heat in the building; or

   **b.** shut off the water supply and drain the system and appliances of water.

   For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden and accidental damage from artificially generated electrical current.**

16. **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the *residence premises.* There is no coverage if breakage of glass is caused by *earthquake.* There is no coverage for loss or damage to the glass.

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover.** Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

## COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT

1. If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense,** meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

   Payment shall be for the shortest time required, not exceeding 24 months, to repair or replace the damage or to permanently relocate.

2. If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover your loss of rent, meaning the rental income to you from that part of the *residence premises* you rent to others at the time of the loss, less any expenses that do not continue while the premises is uninhabitable.

   This coverage does not apply to:

   **a.** The *residence premises* or that part of the *insured location* that is not rented or leased to a tenant at the time of the loss; or

   **b.** to any increase in rent or lease payment that occurs after the time of the loss.

Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

3. If a civil authority prohibits you from use of the *residence premises* as a result of direct damage to neighboring premises by a cause of loss we cover in this policy we cover the **Additional Living Expense** as provided under **1.,** above for no more than two weeks during which use is prohibited.

The total limit of liability available for **Additional Living Expense** and **Loss of Rent** is stated on your Policy Declarations page and is the most we will pay for all loss or costs under **1., 2.** and **3.,** above.

The periods of time under **1., 2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

## ADDITIONAL PROPERTY COVERAGES

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

   We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the *residence premises,* provided the trees damage **Building Property We Cover.** The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** We will pay up to the amount stated in your Policy Declarations for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the *residence premises,* for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the *residence premises,* Vandalism or Malicious mischief and Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

4. **Fire Department Service Charge.** We will pay, up to the amount stated in your Policy Declarations, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

   We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Land Stabilization.** We will pay up to the amount stated in your Policy Declarations for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

7. **Building Ordinance or Law Coverage.** We will pay for damage to **Building Property We Cover** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.

   This coverage does not apply unless you choose to repair or rebuild your property at its present location.

   We do not cover:

   a. the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

b.  the costs to comply with any ordinance which requires any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.* However, for purposes of **Building Ordinance or Law Coverage,** *pollutants or contaminants* shall not include asbestos or materials containing asbestos.

You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

The limit of liability shown in your Policy Declarations is the most we will pay for the total of all loss or costs for **Building Property We Cover,** regardless of the number of locations or number of claims made.

This is an additional amount of insurance.

8.  **Arson Reward.** We will pay up to the amount stated in your Policy Declarations for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable.

However, we will not pay more than the amount stated in your Policy Declarations per event regardless of the number of persons providing information.

9.  **Household Products Coverage.** We cover direct physical loss to the property described in Coverages **A** and **B** arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products on the *residence premises.* Household products include items currently in use or your possession at the *residence premises* in normal household quantities such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

We will pay up to 5% of the Coverage A limit of liability stated in your Policy Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to:

a.  any fee, assessment or expense of any governmental authority;

b.  loss arising out of household products possessed or used:

(1)  for *business* purposes;

(2)  for illegal purposes;

(3)  by contractors; or

(4)  on driveways or walkways.

**Pollution or Contamination** under **Section I — Building Property Losses We Do Not Cover** does not apply to this **Additional Property Coverage.**

In the event that a loss is covered under both this coverage and **Additional Property Coverages — Building Ordinance or Law Coverage,** you may elect either one of these coverages, but not both.

10.  *Fungi,* **Wet or Dry Rot, or Bacteria.** We will pay up to the amount stated in your Policy Declarations for:

a.  the direct physical loss to covered property caused by *fungi,* wet or dry rot, or bacteria;

b.  the cost to remove *fungi,* wet or dry rot, or bacteria from covered property;

c.  the cost to tear out and replace any part of the building or other covered property as needed to gain access to the *fungi,* wet or dry rot, or bacteria;

d.  the cost of any testing of air or property to confirm the absence, presence or level of *fungi,* wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *fungi,* wet or dry rot, or bacteria; and

e.  **Coverage D — Additional Living Expense and Loss Of Rent.**

This coverage, 10. *Fungi,* **Wet or Dry Rot, or Bacteria,** only applies when such loss or costs:

f.  are a result of a loss we cover that occurs during the policy period;



HOM-7030/EP R2 1/09                                    - 9 -

    **g.**  are not excluded under **Building Property Losses We Do Not Cover;** and

    **h.**  only if all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to trees, shrubs, or other plants.

The limit of liability stated in your Policy Declarations for **Fungi, Wet or Dry Rot, or Bacteria** is the most we will pay for the total of all loss or costs for Coverages **A, B, C** and **D,** and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

**11. Collapse.**

    **a.**  With respect to this coverage collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose:

        **(1)**  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

        **(2)**  A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

        **(3)**  A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    **b.**  We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

        **(1)**  The perils under **Personal Property Losses We Cover;**

        **(2)**  Decay that is hidden from view, unless the presence of such decay is known to an **insured** prior to collapse;

        **(3)**  Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an **insured** prior to collapse;

        **(4)**  Weight of contents, equipment, animals or people;

        **(5)**  Weight of rain which collects on a roof; or

        **(6)**  Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    **c.**  Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

This coverage does not increase the limit of liability that applies to the damaged covered property.

**12. Volunteer America**

We insure for all risks of accidental and direct physical loss to the property described in **Coverage C — Personal Property,** when the loss occurs as a direct result of acting as a **volunteer.** No deductible applies to this coverage.

**13. Criminal Conviction Reward.**

    **a.**  We will pay the amount stated in your Policy Declarations to an eligible person for information leading to the arrest and conviction of the person(s) committing a crime resulting in loss to covered property; and

    **b.**  We will pay up to the amount stated in your Policy Declarations to an eligible person for the return of stolen covered property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

        **(1)**  **actual cash value** of the stolen property at the time the property is returned, but not more than the amount that would have been required to repair or replace; or

        **(2)**  the amount determined by the loss settlement procedure applicable to the property returned had the property not been recovered.

**c.** This coverage applies subject to the following conditions:

   **(1)** An eligible person means that person identified by a law enforcement agency as being the first to provide the necessary information or return the stolen property, and who is not:

     **(a)** an *insured;*

     **(b)** a relative of an *insured;*

     **(c)** an employee of a law enforcement agency;

     **(d)** an employee of a *business* engaged in property protection;

     **(e)** any person who had custody of the property at the time the theft was committed; or

     **(f)** any person involved in the crime.

   **(2)** No reward will be paid unless and until the person(s) committing the crime is (are) convicted or the property returned. The amount of the reward in items **a.** and **b.** above is the most we will pay for any one loss to an eligible person.

## SECTION I — PROPERTY CONDITIONS

**1.** **Deductible.** In case of loss under **Section I — Property Coverages** of this policy, we cover only that part of the loss over the applicable deductible stated in your Policy Declarations.

   The deductible does not apply to **Coverage D — Additional Living Expense And Loss Of Rent** or **Fire Department Service Charge.**

**2.** **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility, we will suggest annual changes to your policy limits. These suggestions will be made effective on the renewal of your policy and will be based on information provided to us by you or your agent about your dwelling's features and may be supplemented by public record or inspection. Labor and material cost trends for your area supplied to us by recognized residential construction cost specialists will be included. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

**3.** **An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

   **a.** cooperate with us in the investigation, settlement or defense of any claim or suit;

   **b.** give immediate notice to us or our agent;

   **c.** notify the police in case of loss by theft;

   **d.** protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

   **e.** prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *replacement cost* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

   **f.** as often as we reasonably require:

     **(1)** exhibit the damaged and undamaged property;

     **(2)** provide us with records and documents we request and permit us to make copies; and

     **(3)** submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse, civil or *domestic partner,* or any other *insured.* You shall not interfere with us examining any other *insured.*

   **g.** submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

     **(1)** the time and cause of loss;

     **(2)** interest of the *insured* and all others in the property involved and all encumbrances on the property;

     **(3)** other insurance which may cover the loss;

    **(4)**  changes in title or occupancy of the property during the term of the policy;

    **(5)**  specifications of any damaged building and detailed repair estimates;

    **(6)**  an inventory of damaged personal property described in **3.e.**;

    **(7)**  receipts for **Additional Living Expenses** incurred or records supporting the **Loss of Rent.**

**4.**  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

  **a.**  for more than the amount of the *insured's* interest at the time of loss; or

  **b.**  for more than the applicable limit of liability,

whichever is less.

**5.**  **Loss Settlement.** Covered property losses are settled as follows:

  **a.**  **Replacement Cost.** Property under Coverage A or B at *replacement cost,* not including those items listed in **5.b.(2)** and **(3)** below subject to the following:

    **(1)**  We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

      **(a)**  the limit of liability under the policy applying to Coverage A or B;

      **(b)**  the *replacement cost* of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

      **(c)**  the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss;

      **(d)**  the direct financial loss you incur; or

      **(e)**  our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

    **(2)**  When more than one layer of siding or roofing exists for **Building Property We Cover,** we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

      When more than one layer of finished flooring exists we will pay for the finish of only one layer.

    **(3)**  If the cost to repair or replace is $1,000 or more, we will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced.

    **(4)**  You may disregard the *replacement cost* loss settlement provisions and make claim under this policy for loss or damage to buildings on an *actual cash value* basis but not exceeding the smallest of the following amounts:

      **(a)**  the applicable limit of liability;

      **(b)**  the direct financial loss you incur; or

      **(c)**  our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

      You may still make claim on a *replacement cost* basis by notifying us of your intent to do so within 180 days after the date of loss.

  **b.**  *Actual Cash Value.*

    **(1)**  Personal property covered under Coverage C;

    **(2)**  Wood fences, outdoor antennae and awnings, all whether attached or not to buildings; and

    **(3)**  Structures that are not buildings under Coverage B, except driveways, walkways and other structures connected to the building by only a fence, utility line, plumbing or similar connection;

    at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

**6.**  **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

  **a.**  repair or replace any part to restore the pair or set to its value before the loss; or

345X

**b.** pay the difference between *actual cash value* of the pair or set before and after the loss.

**7. Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

**a.** pay its own appraiser; and

**b.** bear the other expenses of the appraisal and umpire equally.

**8. Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

**9. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

**10. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

**a.** we reach agreement with you;

**b.** there is an entry of a final judgment; or

**c.** there is a filing of an appraisal award with us.

**11. Abandonment of Property.** We need not accept any property abandoned by any *insured.*

**12. Mortgage Clause.**

The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** pays any premium due under this policy on demand if you have neglected to pay the premium;

**c.** submits assigned, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

**d.** complies with item **3.e.** of **Section I — Property Conditions.**

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is canceled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

**e.** we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**f.** at our option, we shall receive full or partial assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt as our payment, including any accrued interest, as it bears to the amount of the principal on the mortgage.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**14. Other Insurance and Service Agreements.** If a loss covered by this policy is also covered by:

    **a.** other insurance, we will pay only the proportion of the loss caused by a peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the loss; or

    **b.** a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement includes a service plan, property restoration plan or warranty, even if it is characterized as insurance.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Salvage Value.** Any value that may be realized from *salvage* will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to *salvage.*

## SECTION II — LIABILITY COVERAGES

**LIABILITY LOSSES WE COVER**

**COVERAGE E — PERSONAL LIABILITY**

If a claim is made or a suit is brought against any insured for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

**1.** pay up to our limit of liability for the damages for which the *insured* is legally liable; and

**2.** provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

**COVERAGE F — MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury.* Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees.* As to others, this coverage applies only:

**1.** to a person on the *insured location* with the permission of any *insured;* or

**2.** to a person off the *insured location,* if the *bodily injury:*

    **a.** arises out of a condition on the *insured location* or the ways immediately adjoining;

    **b.** is caused by the activities of any *insured;*

    **c.** is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured;* or

    **d.** is caused by an animal owned by or in the care of any *insured.*

**LIABILITY LOSSES WE DO NOT COVER**

**1.** **Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others** do not apply to *bodily injury* or *property damage:*

    **a.** which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured;*

    This exclusion applies even if:

       **(1)** such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or

       **(2)** such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended.

This exclusion does not apply to *bodily injury* resulting from the use of reasonable force by any *insured* to protect persons or property.

**b.**   which results from violation of criminal law committed by, or with the knowledge or consent of any *insured.*

This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

**c.**   arising out of *business* pursuits of any *insured.*

This exclusion does not apply to:

**(1)**   activities which are ordinarily incident to non-*business* pursuits;

**(2)**   the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

**(3)**   the rental or holding for rental of an *insured location:*

**(a)**   on an occasional basis for the exclusive use as a residence;

**(b)**   in part, unless intended for use as a residence by more than two roomers or boarders; or

**(c)**   in part, as an office, school, studio or private garage;

**d.**   arising out of the rendering or failing to render professional services;

**e.**   arising out of any premises owned or rented to any *insured* which is not an *insured location;*

**f.**   arising out of the ownership, maintenance, use, loading or unloading of:

**(1)**   aircraft.

This does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**(2)**   motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any *insured.*

This exclusion does not apply to:

**(a)**   a trailer not towed by or carried on a motorized land vehicle;

**(b)**   a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

**i.**   not owned by any *insured;* or

**ii.**   owned by any *insured,* while on an *insured location;*

**(c)**   a motorized golf cart which is owned by an *insured,* designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and at the time of an *occurrence* is within the legal boundaries of:

**i.**   a golfing facility and is parked or stored there, or being used by an *insured* to:

**(i)**   play the game of golf or for other recreational or leisure activity allowed by the facility;

**(ii)**   travel to or from an area where motor vehicles or golf carts are parked or stored; or

**(iii)**   cross public roads at designated points to access other parts of the golfing facility; or

**ii.**   a private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an *insured's* residence.

**(d)**   a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of an *insured location,* which is:

**i.**   not designed for travel on public roads; and

**ii.**   not subject to motor vehicle registration, licensing or permits; or



(e) electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

(f) a motorized land vehicle in dead storage on an **insured location.**

(3) watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

(c) powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any **insured.**

However, outboard motors of 50 or more total horsepower are covered for the policy period if:

i. you acquired them prior to the policy inception, and:

(i) declared them at policy inception; or

(ii) you ask us in writing to insure them within 45 days after you become the owner;

ii. you acquire them during the policy period, provided you ask us to insure them:

(i) during the policy period in which you become the owner; or

(ii) within 45 days after you become the owner;

whichever is greater, and pay any resulting additional premium from the date acquired.

(d) designed as an air boat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a **personal watercraft.**

This exclusion does not apply while the watercraft is stored.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

Exclusions **e.** and **f.** do not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by any **insured;**

g. arising out of:

(1) the entrustment by any insured to any person;

(2) the supervision by any insured of any person;

(3) any act, decision or omission by any insured;

(4) any liability statutorily imposed on any insured; or

(5) any liability assumed through an unwritten or written agreement by any insured;

with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section II of this policy.

h. caused directly or indirectly by war, including the following and any consequences of the following:

(1) undeclared war, civil war, insurrection, rebellion, or revolution;

(2) warlike act by a military force or military personnel; or

(3) destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

i. which results from the legal liability of any **insured** because of home care services, day care or any hospice related activity provided to any person on a regular basis by or at the direction of:

(1) any insured;

(2) any employee of any insured;

(3)   any other person actually or apparently acting on behalf of any insured.

Regular basis means more than 20 hours per week. This exclusion does not apply to:

(1)   home care services provided to the relatives of any **insured;**

(2)   occasional or part-time home care services provided by any **insured** under 23 years of age.

j.   which arises out of the transmission of a communicable disease by any **insured;**

k.   arising out of physical or mental abuse, sexual molestation or sexual harassment.

l.   arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

   However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

m.   arising out of any **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2.   **Coverage E — Personal Liability** does not apply to:

a.   Liability:

(1)   for any assessment charged against you as a member of an association of property owners except as provided under **Additional Liability Coverages — Loss Assessment Coverage** in **Section II — Liability Coverages;**

(2)   under any contract or agreement. However, this does not apply to written contracts:

(a)   that directly relate to the ownership, maintenance or use of an **insured location;** or

(b)   where the liability of others is assumed by the **insured** prior to an **occurrence;**

   unless excluded in **2.a.(1)** above or elsewhere in this policy;

(3)   liability arising out of any written or oral agreement for the sale or transfer of real property, including but not limited to liability for:

(a)   known or unknown property or structural defects;

(b)   known or hidden defects in the plumbing, heating, air conditioning or electrical systems;

(c)   known or unknown soil conditions or drainage problems; or

(d)   concealment or misrepresentation of any known defects.

b.   **property damage** to property owned by any **insured;**

c.   **property damage** to property rented to, occupied or used by or in the care of any **insured.** This exclusion does not apply to **property damage** caused by fire, smoke, explosion or water;

d.   **bodily injury** to any person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under:

(1)   any workers compensation;

(2)   non-occupational disability; or

(3)   occupational disease law;

e.   **bodily injury** or **property damage** for which any **insured** under this policy is also an **insured** under a nuclear energy liability policy or would be an **insured** but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f.   **bodily injury** to an **insured** within the meaning of parts **(1)** or **(2)** of **Policy Definitions, 3.g. Insured;**

g. **bodily injury** or **property damage** arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of **pollutants or contaminants** at any time. This includes any loss, cost or expense arising out of any:

    **(1)** request, demand or order that any **insured** or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of **pollutants or contaminants;**

    **(2)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of **pollutants or contaminants;**

    This exclusion does not apply to **bodily injury** sustained within a building on the **residence premises** and caused by, smoke, fumes, including carbon monoxide, vapor or soot from equipment used to heat that building.

h. liability arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data;

i. liability arising out of any animal that any **insured** acquires, owns or keeps that:

    **(1)** is of a breed or kind named by or controlled by any local, state, or federal ordinance or law because of public safety concerns;

    **(2)** has previously inflicted injury upon any person resulting in;

        **(a)** maiming, disfigurement, mutilation, impairment, disability or death; or

        **(b)** loss of work, schooling, or a loss of ability to carry on with a normal routine;

    **(3)** has been trained to fight or attack;

    **(4)** has been trained to kill;

    **(5)** is a wild canine or feral dog or an offspring from breeding with a wild canine;

    **(6)** is illegal to acquire, own or keep;

    **(7)** is wild by birth or by nature and the species is not customarily domesticated;

    **(8)** is a bird of prey;

    **(9)** is venomous; or

    **(10)** is a primate.

    Item **(3)** above does not apply in the event the animal is reacting to protect people or property from imminent harm.

    This exclusion does not apply to any person or organization described as an **insured** in **Policy Definitions,** item **g.(3).**

**3.** **Coverage F — Medical Payments to Others** does not apply to **bodily injury:**

a. to a **residence employee** if the **bodily injury** occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured;**

b. to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation; non-occupational disability, or occupational disease law;

c. from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to any person, other than a **residence employee** of any **insured,** regularly residing on any part of the **insured location.**

---

## ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

**1.** **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against any **insured** in any suit we defend;

   **b.** premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E — Personal Liability.** We are not obligated to apply for or furnish any bond; and

   **c.** reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit.

**2.** **First Aid Expenses.** We will pay expenses for first aid to others incurred by any **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured.**

**3.** **Damage to Property of Others.** We will pay on a **replacement cost** basis up to $500 per **occurrence** for **property damage** to property of others caused by any **insured.**

We will not pay for **property damage:**

   **a.** if insurance is otherwise provided in this policy;

   **b.** caused intentionally by any **insured** who is 13 years of age or older;

   **c.** to property owned by or rented to any **insured,** a tenant of any **insured,** or a resident in your household; or

   **d.** arising out of:

      **(1)** **business** pursuits;

      **(2)** any act or omission in connection with a premises owned, rented or controlled by an **insured,** other than the **insured location;** or

      **(3)** the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles. This does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any **insured.**

**4.** **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to the limit shown on your Policy Declarations page for:

   **a.** the legal obligation of an **insured** to pay because of theft or unauthorized use of credit cards issued to or registered in any **insured's** name;

   **b.** loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any **insured's** name.

We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any **insured** has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

   **c.** loss to any **insured** caused by forgery or alteration of any check or negotiable instrument; and

   **d.** loss to any **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of **business** pursuits or dishonesty of any **insured.**

Defense:

   **a.** We may make any investigation and settle any claim or suit that we decide is appropriate.

   **b.** If a suit is brought against any **insured** for liability covered under this Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

   **c.** We have the option to defend at our expense any **insured** or any **insured's** bank against any suit for the enforcement of payment under the forgery coverage.

**5.** **Statutorily Imposed Vicarious Parental Liability.**

We will pay the lesser of:

   **a.** the statutorily imposed limit; or

   **b.** $3,000;

for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

This coverage is excess over any other valid and collectible insurance.

**6. Loss Assessment.**

    **a.** we will pay loss assessments charged during the policy period against you by the association of property owners up to the limit of liability stated in your Policy Declarations, when the assessment is made as a result of:

        **(1)** each direct loss to property, caused by a peril that would be covered under **Section I — Property Coverages** of this policy;

        **SPECIAL EXCLUSION:** There is no coverage for any loss assessment resulting from the peril of *earthquake.* However, loss assessment for ensuing direct loss by fire, explosion or theft is covered.

        **(2)** each *occurrence* to which **Section II — Liability Coverages** of this policy would apply; and

        **(3)** liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

            **(a)** the director, officer or trustee is elected by the members of the association of property owners; and

            **(b)** the director, officer or trustee serves without deriving any income from the exercise of his/her duties, which are solely on behalf of the association of property owners.

    **b.** **DEDUCTIBLE.** We will pay only that part of your assessment per unit for property insured under Section I that exceeds $500. No other deductible applies to this coverage. If our liability for a loss results from Section I and coverage under this option, only the larger deductible will apply.

**7. Volunteer America.**

    **a.** Under **Section II — Liability Coverages,** the following applies:

        **(1)** **Property Damage to Others.** We will pay an additional $2,000 for direct damage caused as direct result of acting as a *volunteer.*

        **(2)** **Medical Payments to Others.** We will pay up to double the amount stated in your Policy Declarations for *bodily injury* caused as a direct result of acting as a *volunteer.*

    **b.** Under **Section II — Liability Losses We Do Not Cover** the following items are modified as follows:

        **(1)** Item **1.c.** does not apply to activities as a *volunteer.*

        **(2)** Item **1.d.** does not apply to professional services, other than professional health care services by a doctor, performed as a *volunteer.*

348X

---

## SECTION II — LIABILITY CONDITIONS

**1. Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage E stated in your Policy Declarations. This limit is the same regardless of the number of *insureds,* claims made or persons injured.

Our total liability under Coverage F for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage F stated in your Policy Declarations.

**2. Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

**3. Your Duties After Loss.** In case of an accident or *occurrence,* the *insured* shall perform the following duties that apply:

    **a.** give written notice to us or our agent as soon as practicable, which sets forth:

        **(1)** the identity of the policy and *insured;*

    (2)  reasonably available information on the time, place and circumstances of the accident or **occurrence;**

    (3)  names and addresses of any claimants and witnesses; and

    (4)  in case of loss under the **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money** also notify the credit card or fund transfer card company;

**b.**  promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence;**

**c.**  at our request, help us:

    (1)  to make a settlement;

    (2)  to enforce any right of contribution or indemnity against any person or organization who may be liable to any **insured;**

    (3)  with the conduct of suits and attend hearings and trials;

    (4)  to secure and give evidence and obtain the attendance of witnesses;

**d.**  under the **Additional Liability Coverages — Damage to the Property of Others** — submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the **insured's** control;

**e.**  submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money Coverage,** stating the amount and cause of loss;

**f.**  the **insured** shall not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the **bodily injury.**

**4.**  **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone acting for the injured person will:

  **a.**  give us written proof of claim, under oath if required, as soon as practical;

  **b.**  authorize us to obtain copies of medical reports and records.

The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

**5.**  **Payment of Claim — Coverage F — Medical Payments to Others.** Payment under this coverage is not an admission of liability by any **insured** or us.

**6.**  **Payment of Interest — Coverage E — Personal Liability.**

If a notice, demand, summons, judgment, or other process is promptly forwarded to us as required by **Liability Condition 3.b.** under **Your Duties After Loss** and we accept the defense or agree to the judgment, we will pay interest on the judgment, subject to all of the following:

  **a.**  We will pay the interest on that part of the judgment that is covered by this policy and that does not exceed our applicable limit of liability.

  **b.**  We will pay interest that accrues on the judgment until we pay, tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

  **c.**  If we appeal the judgment, we will pay interest on the entire judgment.

  **d.**  Post-judgment interest is in addition to the applicable limit of liability.

  **e.**  Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

**7.**  **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any **insured.** Further, no action with respect to Coverage E shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

**8.**  **Bankruptcy of an Insured.** Bankruptcy or insolvency of any **insured** shall not relieve us of any of our obligations under this policy.

HOM-7030/EP R2 1/09           - 21 -

**9.    Other Insurance — Coverage E — Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

**1.    Policy Period and Changes.**

    **a.**    The effective time of this policy is 12:01 A.M. at the *residence premises.* This policy applies only to loss under Section I, or *bodily injury* or *property damage* under Section II, which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

    **b.**    Changes:

        **(1)**    Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

        **(2)**    This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

**2.    Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.

We may void this policy or deny coverage for a loss or *occurrence* if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or *occurrence*. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

**3.    Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

This liberalization clause does not apply to changes implemented that involve a broadening and a restriction of coverage or an increase in premium.

**4.    Cancellation.**

    **a.**    You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

    **b.**    We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in your Policy Declarations. Proof of mailing shall be sufficient proof of notice.

        **(1)**    When you have not paid the premium we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

        **(2)**    When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

        **(3)**    When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 15 days before the date cancellation takes effect.

    c.  When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded when the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

**5.** **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 20 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

**6.** **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

**7.** **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the **insured** shall sign and deliver all related papers and cooperate with us in any reasonable manner.

Subrogation does not apply under Section II to **Coverage F — Medical Payments to Others** or **Additional Liability Coverages, Damage to Property of Others.**

**8.** **Death.** If you die:

    a.  we insure your legal representative, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

    b.  **insured** shall include:

        (1)  any member of the household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

        (2)  with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## POLICY DEFINITIONS

**1.** Throughout this policy, "you" and "your" refer to:

    a.  the "named insured" shown in your Policy Declarations; and

if a resident of the same household:

    b.  the spouse;

    c.  the civil partner by civil union licensed and certified by the state; or

    d.  the **domestic partner.**

**2.** "We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations.

**3.** In addition, certain words and phrases are defined as follows:

    a.  *"Actual cash value"*

        (1)  When damage to property is economically repairable, *actual cash value* shall mean the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

        (2)  When damage to property is not economically repairable or loss prevents repair, *actual cash value* shall mean the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

        (3)  Otherwise, *actual cash value* shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

        (4)  *Actual cash value* shall not include taxes or any expenses unless incurred following the loss.



Civil Case Cover Sheet 1st Amendment

AuthentiSign ID: 365B08FF-B8EF-4A50-8BAD-587B3A84966F

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Susan Carol Plichcik<br>PO Box 16020<br>Santa Rosa CA 95402 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: 707-206-5814   FAX NO.:<br>ATTORNEY FOR *(Name)*: In Pro Per | **ELECTRONICALLY FILED**<br>**Superior Court of California**<br>**County of Sonoma**<br>**5/26/2021 4:51 PM** |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sonoma<br>STREET ADDRESS: Hall of Justice<br>MAILING ADDRESS: 600 Adminstration Drive<br>CITY AND ZIP CODE: Santa Rosa CA 95403<br>BRANCH NAME: CIVIL | **Arlene D. Junior, Clerk of the Court**<br>**By: Griselda Zavala, Deputy Clerk** |

CASE NAME:
Susan Carol Plichick vs Safeco Insurance, Additional Parties Attached

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | SCV-267777 |
| | | | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[✓] Insurance coverage (18)<br>[ ] Other contract (37) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>[ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | **Real Property**<br>[ ] Eminent domain/Inverse condemnation (14)<br>[ ] Wrongful eviction (33)<br>[ ] Other real property (26) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment**<br>[ ] Enforcement of judgment (20) |
| **Non-PI/PD/WD (Other) Tort**<br>[ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11)<br>[ ] Writ of mandate (02) | **Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify)*: 6
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 05/26/2021
Susan Carol Plichik
_____
(TYPE OR PRINT NAME)

▶ AuthentiSign
*Susan Carol Plichick*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Footer-Page 1 of 2.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

Authentisign ID: 365B08FF-B8EF-4A50-8BAD-587B3A84966F

Civil Case Cover Sheet 1st Amendment

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice— Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

Authentisign ID: 365B08FF-B8EF-4A50-8BAD-587B3A84966F

Civil Case Cover Sheet 1st Amendment

Additional Parties Attachment:

SCV-267777

Defendants:

SAFECO INSURANCE; SAFECO INSURANCE COMPANY OF AMERICA; SAFECO INSURANCE COMPANY OF ILLINOIS; GENERAL INSURANCE COMPANY OF AMERICA, a California corporation; DOES 1 through 25, inclusive

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>**CIVIL DIVISION**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>http://www.sonoma.courts.ca.gov | (FOR COURT USE ONLY)<br><br>**ELECTRONICALLY FILED**<br>**Superior Court of California**<br>**County of Sonoma**<br>**2/1/2021 10:37 AM**<br>**Arlene D. Junior, Clerk of the Court**<br>**By: Janie Dorman, Deputy Clerk** |
| Plichcik _____ v. Safeco Insurance, et al. | |
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,**<br>**NOTICE OF CASE MANAGEMENT CONFERENCE,**<br>**and ORDER TO SHOW CAUSE** | Case number:<br>SCV-267777 |

## A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT AND WITH ANY CROSS-COMPLAINT

1. **THIS ACTION IS ASSIGNED TO HON. PATRICK BRODERICK** _____
**FOR ALL PURPOSES.**
Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. EACH DEFENDANT MUST FILE A WRITTEN RESPONSE TO THE COMPLAINT AS REQUIRED BY THE SUMMONS.

A Case Management Conference has been set at the time and place indicated below:

| | | |
|---|---|---|
| **Date:** Tuesday, 06/08/2021 | **Time:** 3:00 PM | **Courtroom:** 16 |
| **Location:** 3035 CLEVELAND AVE STE 200<br>SANTA ROSA, CA 95403 | | |

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 521-6883 or by going to http://sonoma.courts.ca.gov/online-services/tentative-rulings.

## ORDER TO SHOW CAUSE

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:
If, on the date shown above, you are not in compliance with the requirements stated in the California Rules of Court, rules 2.30, 3.110, and/or 3.720 through 3.771 inclusive, you must then and there show cause why this court should not impose monetary and/or terminating sanctions in this matter.

Pursuant to California Rule of Court, rule 3.221(b), information and forms related to Alternative Dispute Resolution are available on the Court's website at http://www.sonoma.courts.ca.gov/self-help/adr.

## ELECTRONIC SERVICE OF DOCUMENTS
### Enabled by Local Rule 18.16

Voluntary e-service is available in Sonoma County. The Court has pre-approved a Stipulation for cases in which the attorneys or parties choose e-service. A copy of the Stipulation is available under the "Civil" section in the "Division" tab of the Court website: http://www.sonoma.courts.ca.gov. The advantages of e-service to the parties include:

| | |
|---|---|
| SAVE MONEY | Reduction in costs related to photocopying, retrieving, storing, messenger and postage fees. No special software is needed to use e-service |
| SAVE TIME | Instant service of your documents on all parties |
| SAVE SPACE | With 24/7 internet access to all documents, you do not need to house paper copies |
| GAIN CERTAINTY | Immediate confirmation of service for your records. Documents are not delayed in the mail or blocked by email spam blockers and firewalls |

To take advantage of e-service, select an e-service provider and file the signed Stipulation with the Court. Parties can then e-serve documents through the selected provider. Information about e-service providers is available at the website for the Sonoma County Bar Association: http://www.sonomacountybar.org. The Court does not endorse one provider over another.

**To learn more about available e-service providers and their fees, please visit their website**

*Note: Hard-copy pleadings are required to be filed with the Court in accordance with applicable provisions of the Code of Civil Procedure, California Rules of Court and local rules. You do not need to provide a courtesy copy of a served document to the specific department in which the matter has been assigned.*

## DISCOVERY FACILITATOR PROGRAM

Effective January 1, 2008, the Sonoma County Superior Court promulgated Sonoma County Local Rule 4.14 which established the Discovery Facilitator Program. Participation in the Discovery Facilitator Program shall be deemed to satisfy a party's obligation to meet and confer under Sonoma County Local Rule 5.5 and applicable provisions of the Code of Civil Procedure and California Rules of Court. This program has been providing assistance in resolving discovery disputes and reducing the backlog of matters on the law and motion calendars in our civil law departments. The Sonoma County Superior Court encourages all attorneys and parties to utilize the Discovery Facilitator Program in order to help resolve or reduce the issues in dispute whether or not a discovery motion is filed.

There is a link to Local Rule 4.14 and the list of discovery facilitator volunteers on the official website of the Sonoma County Superior Court at http://www.sonoma.courts.ca.gov. On the home page, under the "AVAILABLE PROGRAMS & HELP" section, click on »Discovery Facilitator Program. You can then click on either "Local Rule 4.14" to obtain the language of the local rule, or "List of Facilitators" for a list of the volunteer discovery facilitators and accompanying contact and biographical information.

**Pursuant to Local Rule 5.1.C:**

The moving party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of any motion filed. The responding party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of all opposition papers. Finally, the moving party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of all reply papers.

**Pursuant to Local Rule 5.1.C.1:**

If any matter scheduled on the law and motion calendar is resolved, dismissed, settled or becomes moot for any reason, the moving party shall immediately notify the judicial assistant for the Assigned Judge if the motion is to be dropped from the law and motion calendar. Said notification may be made by telephone, followed by a letter of confirmation.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| Susan Carol Plichcik<br>PO Box 16020<br>Santa Rosa Ca 95402<br>  TELEPHONE NO.: 707-206-5814    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional): ilovelu@pacbell.net<br>ATTORNEY FOR (Name): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER: Susan Carol Plichcik<br><br>DEFENDANT/RESPONDENT: Safeco Insurance (Additional Parties on Attached form) | |

| **ADR INFORMATION SHEET**<br>[Sonoma County Superior Court Rules, Rule 16] | CASE NUMBER: SCV-267777 |
|---|---|
| (Check one):   ☑ **UNLIMITED CASE**<br>(Amount demanded exceeds $25,000)    ☐ **LIMITED CASE**<br>(Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

## NOTICE TO ALL PARTIES AND THEIR ATTORNEYS

The policy of the Sonoma County Superior Court is:

"The formal litigation of legal claims and disputes is expensive and time consuming. The overall results achieved by some or all of the parties are often unsatisfactory. There are many modern alternatives to formal court litigation which are less expensive, less time consuming, and more beneficial to the parties. It is therefore the firm policy and goal of this court to encourage the parties in all civil cases to explore and pursue private dispute resolution alternatives at the earliest possible date." (Local Rule 16.1.)

Although most (90-98%) cases do settle, many settlements come only after a considerable amount of time, money, and resources have been expended. Such expenditures, as well as the adversarial nature of litigation, can be a disincentive to settlement. The Sonoma County Superior Court encourages the use of Alternative Dispute Resolution (ADR) as early as possible after the parties become aware of a dispute.

Most ADR processes are voluntary and are paid for by the parties themselves, but ADR has proved in many cases to be faster, cheaper, and more effective than traditional litigation.

## ADVANTAGES OF ADR:

The filing of your complaint or answer may be just the beginning of the costs that you will incur during the course of your lawsuit. Lawsuits can be extremely costly. By utilizing ADR methods early in the course of your case, you may significantly reduce these costs by either resolving the case before expensive discovery and trial proceedings are commenced or by narrowing the scope of your discovery by identifying disputed and undisputed factual and legal issues.

ADR can be a fast, economical, efficient, and effective way to resolve civil cases, and most litigants report satisfaction with the process. ADR procedures can be scheduled at your convenience and can be completed in a fraction of the time required for traditional litigation. The cost of ADR will depend on the procedure and the provider you select, and the cost is typically less than litigation.

Most ADR processes are confidential but can result in enforceable agreements. Many ADR processes will give you an opportunity to test the strengths and weaknesses of your case without adverse impact in the event of a trial. Depending upon the method of ADR you select, it may be the last chance for you to control the outcome of your dispute before you place the decision in the hands of a judge or jury.

## METHODS OF ADR:

**A. MEDIATION:** Mediation is one of the most frequently used methods of ADR because it is informal, quick, convenient and confidential. In this process the parties select a neutral mediator who facilitates the identification of issues and areas of agreement and assists in finding a resolution or settlement of the dispute. Since mediation requires the agreement of the parties to resolve the matter, control of the proceedings and a determination of the settlement terms remains completely in the parties' hands. The mediator remains neutral and assists the parties in arriving at terms that are mutually agreeable.

---

CV-2 [Rev. July 1, 2011]
Form adopted for mandatory use

**ADR INFORMATION SHEET**

Page 1 of 2

| PLAINTIFF/PETITIONER:  Susan Carol Plichcik | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Safeco Insurance et al. | |

**B. ARBITRATION:** The parties jointly employ a neutral third party or a panel of neutrals to listen to both sides and render a decision. The parties are free to make the arbitrator's decision binding or non-binding. When non-binding, the arbitrator's decision serves as guide or influence upon the parties to bring them closer to settlement. If it is binding, the decision of the arbitrator will be final and generally avoids any further proceedings in the case. Non-binding judicial arbitration may be ordered in certain cases before trial.

**C. EARLY NEUTRAL EVALUATION:** A neutral evaluator is hired by the parties to give an evaluation of the case to help settle it. You or your attorney will be permitted to prepare a written statement, present critical witnesses or other evidence, argue your case to the evaluator, meet separately and confidentially with the evaluator, and utilize the evaluator to communicate any settlement offers to the opposing party.

**D. PRIVATE SETTLEMENT CONFERENCE:** A voluntary settlement conference is similar to early neutral evaluation in that the parties employ a neutral settlement officer who attempts to persuade the parties to accept a compromise position. It is a form of facilitated negotiation in which the settlement officer may express an opinion about the value of the case, the substantive merits of each party's position, and the probable outcome of the trial.

There are various other methods or combinations of methods of ADR, such as summary jury trial, mini-trial, special master and discovery referee. The court encourages the parties to be creative in selecting the process which has the best chance of resolving the case as quickly, effectively, and inexpensively as possible. You will have a chance to review your ADR options at the time of the Early Mediation and Case Management Conference.

**The undersigned party is willing to agree to any of the following forms of ADR at this time (for family law and probate actions only). Your selection will inform the other parties in the case of your current thoughts regarding the use of ADR. If all parties agree on a particular ADR method, you will be asked to file a stipulation on the court's form. The stipulation form (Sonoma County Superior Court form #MISC-101) can be found at the court's web site and is available at the court.)**

| | | |
|---|---|---|
| ☐ Mediation | ☐ Early Neutral Evaluation |
| ☐ Non-binding Private Arbitration | ☐ Binding Private Arbitration |
| ☐ Voluntary Settlement Conference | ☐ Summary Jury Trial |
| ☐ Other _____ | ☐ Judicial Arbitration |

I / We certify that I / We have read and understood (or have had explained to me / us) the foregoing.

Date: _____

_____
Signature of Party

Date: _____

_____
Signature of Party

Date: _____

_____
Signature of Attorney for Party
☐ Additional signatures are attached

**NOTE: This form requires the signatures of the parties and their attorney. All parties must complete, file and serve this form in accordance with Sonoma County Superior Court Rules, Rule 16. See Rule 16.3 for specific filing and service instructions.**

Additional Parties Attachment:

SCV-267777

Defendants:

SAFECO INSURANCE; SAFECO INSURANCE COMPANY OF AMERICA; SAFECO INSURANCE COMPANY OF ILLINOIS; GENERAL INSURANCE COMPANY OF AMERICA, a California corporation; DOES 1 through 25, inclusive

1

**PROOF OF SERVICE**

2

COUNTY OF SAN FRANCISCO       )
STATE OF CALIFORNIA                      )

3

4

      I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is Cooper Maynard & Gale, Two Embarcadero Center, Suite 1450, San Francisco, California 94111. On the below date, I served or cause to be served a true copy of the foregoing document(s) described as:

5

6

**NOTICE OF REMOVAL**

7

      on the interested parties in this action addressed as follows:

8

**[x] BY UNITED STATES MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons at the address listed below and deposited the sealed envelope with the United States Postal Service, with the postage fully paid.

9

10

11

      Susan Carol Plichcik
      PO Box 16020
      Santa Rosa, CA 95402
      Telephone: (707) 206-5814
      *Plaintiff In Pro Per*

12

13

14

      I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

15

      Executed on July 2, 2021, at San Francisco, California.

16

17

18

                               _____

19

                                Brian Day, Legal Assistant

20

21

22

23

24

25

26

27

28